UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE UNITEDHEALTH GROUP PBM LITIGATION | Case No. 16-cv-3352 (JNE/BRT)<br><br>**ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

Pursuant to the Joint Stipulation regarding Production of Electronically Stored Information and Hard Copy Documents (ECF No. 65), entered into by the parties, to develop a protocol for the preservation and production of electronically stored information ("ESI"),

**IT IS HEREBY ORDERED** that the Stipulation (ECF No. 65) is **APPROVED** and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, all Parties in the above-captioned matter must comply with the following obligations in this litigation:

**I.     GENERAL**

A.     The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

B.     The production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs.  The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

C.      Except as specifically limited herein, this Stipulation governs the production of discoverable documents during the litigation.  In the event of transfer to other courts, this Stipulation will remain in effect in all respects, unless and until replaced by a successor agreement.

D.      This Stipulation shall neither enlarge, reduce, nor otherwise affect the scope of discovery in this litigation as imposed by the Court's orders nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.

E.      Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and an Agreed Protective Order on Confidentiality to be entered by the Court ("Protective Order"), all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that are not discoverable or protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege or protection that may be applicable.  Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure, on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

F.      The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation.  To the extent

compliance with this Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

G.   The Parties agree that no party is obligated to translate foreign language documents into English for production purposes, however the producing party will identify such documents to the requesting party.

H.   Consistent with their obligations under applicable Federal Rules of Civil Procedure and the Local Rules, the Parties will attempt to resolve, in person, in writing (including email), or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

**DEFINITIONS**

A.   "Electronically stored information," or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34, and refers to computer generated information or data of any kind, stored in or on any storage media.

B.   "Native," "Native format," or "Native data format" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

C.   "Metadata" means and refers to information about information or data about data, and includes, without limitation: (1) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that

generated, edited, or modified such native file and/or (2) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

  D. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include, but is not limited to, Hard-Copy Documents, Electronic Documents, and ESI as defined herein, writings, drawings, graphs, charts, photographs, sound recordings, video, images, or any other data or data compilations stored in any medium from which information can be obtained.

  E. "Media" means an object or device, real or virtual, on which data is or was stored, including but not limited to, a disc, hard drive, tape, computer, flash drive, server, cloud based storage, virtual machine, or other device.

  F. "Optical Character Recognition" or "OCR" means the process of recognizing and creating a file containing visible text within an image.

  G. "Searchable Text" or "Extracted Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

  H. "And" and "or" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, e.g., "and" shall be construed to mean "and/or."

I. "Include" and "Including" shall be construed to mean "include but not limited to" and "including, but not limited to."

J. Reference to the singular shall also be deemed to refer to the plural, and vice-versa.

## II. PRODUCTION FORMAT – HARD COPY

Hard copy documents should be scanned in a manner so as to retain the original organization of the hard copy documents.  Hard copy documents should be scanned in PDF format or as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat).  The database load file should contain the following fields to the extent captured at the time of collection: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN."  Hard copy documents should be physically unitized.  Color originals may be scanned in black and white ("B&W"), but either party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original; however, categorical or wholesale requests are deemed invalid.  To the extent the Producing Party OCRs the document for its own benefit, OCR should be produced.

## III. PRODUCTION FORMAT – ESI

ESI should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of audio, video, and spreadsheet-type files (including, but not limited to, Microsoft Excel and CSV files) which should be produced in native format.  All ESI

should be produced with a delimited, database load file that contains the metadata fields listed in Table 1 hereto, to the extent captured at the time of the collection.  To the extent that metadata does not exist or is not reasonably accessible or available because it was overwritten for any documents produced, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data.  An .opt image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document.  For example, TIFF images of email messages should include the BCC line.  PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image.  Color originals may be produced in B&W TIFF format; provided that: (1) a party may subsequently request, by Bates number(s), a replacement set of images in Color and (2) the producing party must provide such Color versions within 10 business days.  The Parties agree to only request color versions if they believe that the loss of the color detracts from the usability or reduces the ability to understand the original.

If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided.  If documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.  Each native file should be named according to the Bates number it has been assigned, and

should be linked directly to its corresponding record in the load file using the NATIVELINK field.

**Informal ESI Collection**.  The parties acknowledge that in some circumstances it may be more efficient to collect Electronic Files informally.  Accordingly, a party may collect and produce up to five hundred (500) Electronic Files utilizing informal collection methods even though such collection method may alter certain aspects of those files' metadata as they exist at the time of collection (e.g., created date, file path); provided that (1) the producing party will disclose to the receiving party, by Bates number, the files that were collected utilizing informal methods and (2) if the original metadata of these informally collected files becomes of material importance during the course of the litigation, the parties shall meet and confer regarding how to address that issue.

## IV.   PRODUCTION FORMAT - STRUCTURED DATA

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

## V.   PRODUCTION FORMAT - MEDIA

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission.  The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter or email.  If a Producing Party encrypts or

"locks" the production, the Producing Party shall send, under separate cover or email, an explanation of how to decrypt the files.

## VI.   PROCESSING SPECIFICATIONS

A.   <u>ESI Date and Time Processing</u>: To the extent reasonably practicable, all ESI shall be processed within a uniform time zone: i.e., Greenwich Mean Time "GMT". To the extent a Producing Party cannot process ESI with GMT, it shall disclose the same and the Parties shall meet and confer regarding a reasonable alternative.

B.   <u>Global or Horizontal Deduplication</u>:  Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level).  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  De-duplication should be done across the entire collection (*i.e.*, global level) and the ALL CUSTODIAN field should list each Custodian, separated by a semicolon, who was a source of that document. The CUSTODIAN field shall represent the custodian of the document uploaded to the review platform.

C.   <u>Email Thread Suppression</u>: Each Party may also deduplicate emails in such a way as to eliminate earlier or incomplete chains of emails, and produce only the most complete iteration of an email chain and any unique attachments associated with the email set; provided that none of the earlier emails in the chain contained attachments.  In

8

other words, regardless of the existence of a more complete, later email, all emails that contain attachments must also be produced.

      D.      <u>Corrupted or Unreadable Files</u>:  If any file is corrupted or not readable by the Producing Party, and is attached to an otherwise responsive document, it shall be produced with a slip sheet indicating the file is corrupt and could not be reviewed.

      E.      <u>System Files</u>:  Each Party may exclude certain files and folders that are reasonably identified as system files and do not contain user-created files.

      F.      <u>Bates Numbering</u>:  All images must be assigned a unique and sequential Bates number<u>.</u>

      G.      <u>Parent-Child Relationships</u>:  The parent-child relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. All parent and child documents shall be produced if any of the parent or child documents are relevant. If the parent or child is privileged, a slip sheet shall be inserted in the production.

      H.      <u>Track Changes and Comments</u>:   To the extent that a document contains tracked changes or comments, those tracked changes and comments should be preserved when images of the document are created.

      I.      <u>Password Protected Files</u>:  The producing party shall produce passwords for any password-protected files to the extent the passwords are reasonably available, or in the alternative, shall take reasonable efforts to produce an unprotected version of the file.

J.  Embedded Documents:  Embedded ESI documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related back to the respective top level parent document (*e.g.*, standalone file, email message, etc.) via the BegAttach and EndAttach fields referenced in Appendix 1 if the document is not an OLE object and the entire embedded document is referenced by or in the parent document.  Related documents will be produced within a continuous Bates range.

VII.  **IDENTIFICATION AND COLLECTION OF DOCUMENTS**

A.  Except at otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

1.  List of records custodians;

2.  Search methodology to be applied, including, but not limited to, search terms and date restrictions; and

3.  Location of relevant data sources including custodial and non-custodial; and

4.  Applicable timeframe for collection and review of documents.

B.  Search Methodology:

1.  Email and Non-Email: the Parties agree to search for responsive records from sources of hard copy and ESI to the extent that a custodian reveals, or a party believes, such locations may contain responsive information.

VIII.  **PRESERVATION**

A. The Parties acknowledge that they have an obligation to take reasonable steps to preserve discoverable information in the Party's possession, custody, or control.

B. Unless otherwise provided in this Stipulation, paper and electronic records that may contain non-duplicative information potentially relevant to the claims alleged in the Complaint, or any defenses thereto, or that may be reasonably calculated to lead to the discovery of admissible evidence, are subject to preservation.

C. The Parties agree that the circumstances of this case do not currently warrant the preservation, collection, review, or production of the following types of ESI, which tend not to be reasonably accessible:

1. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary Internet files, history, cache, cookies, and the like.

4. Data stored on photocopiers, scanners, and fax machines.

5. Overwritten data in metadata fields that are frequently updated automatically, such as last-opened dates.

6. Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise

made not reasonably accessible in accordance with an established routine system maintenance policy ("Backup System"). The prescription drug transaction data from October 2010 through the date of final judgment has been identified as residing on active media. To the extent such data resides on BackUp Systems, Defendants will notify Plaintiffs, and the parties will meet and confer to determine the proper steps for preservation, collection, review, or production.

       7.     Server, system, or network logs.

       8.     Voicemail messages.

       9.     Text messages.

      10.    Data only available on personal mobile devices.

      11.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

      12.    Logs of calls made from cellular or land-line phones.

      13.    Instant messages, such as messages sent on Lync Online, Microsoft Communicator or any other instant message platform.

    D.    The Parties anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery. However, nothing herein shall prevent a Party from subsequently requesting ESI or other Documents identified above be preserved and produced if specific facts demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval.

**IX.    PRIVILEGE AND PRIVILEGE LOGS**

A. The Parties agree that the following types of communications need not be included on a privilege log: (1) communications between and among Defendants' employees, representatives, or agents, on the one hand, and Defendants' in-house or outside legal counsel, on the other hand, relating to this litigation; (2) communications between and among Plaintiffs on the one hand, and their outside legal counsel on the other hand, relating to the litigation; (3) communications between or among Defendants' counsel, including within a law firm; and (4) communications between or among Plaintiffs' counsel, including within a law firm.

B. In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will (1) identify the nature of the privilege (including work product) which is being claimed; (2) provide the following information: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other when necessary to evaluate the claim of privilege (e.g., identifying the attorney when the attorney-client privilege is claimed); and (3) prepare a summary log containing, for each document claimed as privileged, an export of all or a subset of the metadata fields listed above (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege. The export should include the following information:

- BEGNO
- ENDNO
- BEGATTACH
- ENDATTACH
- CUSTODIAN
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- AUTHOR
- CREATEDDATE
- PRIV_CLAIM

As set forth in VII.C, only the most complete iteration of an email chain redacted or withheld needs to be identified on the privilege log.

C.   If the requesting party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within fifteen (15) business days of such a request, the Producing Party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

X.   **PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

A. Nothing in this Stipulation shall be construed to prohibit a Producing Party from seeking relief from any production – inadvertent or not – of confidential, privileged, or work-product information. Nothing in this Stipulation shall diminish the legal rights of any person seeking such relief. When a Producing Party gives notice to Receiving Parties that certain produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). Pursuant to Federal Rule of Evidence 502(d), neither the attorney-client privilege nor the work product protection is waived by production in this case or in any other federal or state proceeding. This Stipulation shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

B. Nothing contained in this Stipulation is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

**XI.   GOOD FAITH**

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a Producing Party cannot comply with any aspect of this Stipulation, such Party shall inform the Requesting Party as to why compliance with the Stipulation was unreasonable or not possible within ten (10) business days after so learning. No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the action.

## XII.   NO EFFECT ON DISCOVERY OR ADMISSIBILITY

This Stipulation does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  Nothing in this Stipulation shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any document or data are preserved and may be asserted at any time.

## XIII.   THIRD PARTY DOCUMENTS

A Party that issues a non-Party subpoena ("Issuing Party") may include a copy of this Protocol with the subpoena and request that the receiving party produce Documents in accordance with the specifications set forth herein.  The Issuing Party will notify other Parties within one week of receiving a production in response to a subpoena, and will, if requested, provide copies of such production to the other Parties in the format in which they were received from the third-party.

**IT IS SO ORDERED.**

Date: _____                          _____
                                                BECKY R. THORSON
                                                United States Magistrate Judge

**TABLE 1: METADATA FIELDS**

| Field Name | Example/Format | Description |
| --- | --- | --- |
| **BEGNO** | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| **ENDNO** | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| **BEGATTACH** | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |

16

| Field Name | Example/Format | Description |
|---|---|---|
| **ENDATTACH** | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| **PAGES** | 3 (Numeric) | The number of pages for a document. |
| **MEDIA VOLUME** | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| **DOCUMENT KIND** | Options: e-mail, attachment, hard copy, loose e-file | The record type of a document |
| **SENTDATE** | MM/DD/YYYY HH:MM | The date & time the email was sent. **NOTE:** For attachments to e-mails, this field should be populated with the date sent of the e-mail transmitting the attachment. |
| **CREATEDATE** | MM/DD/YYYY | The date the document was created. |
| **LASTMODDATE** | MM/DD/YYYY | The date the document was last modified. |
| **RECEIVEDDATE** | MM/DD/YYYY HH:MM | The date & time the document was received. |
| **FILEPATH** | i.e. Joe Smith/E-mail/Inbox<br>Joe Smith/E-mail/Deleted Items<br>Joe Smith/Loose Files/Accounting/...<br>Joe Smith/Loose Files/Documents and Settings/... | Location of the original document. The source should be the start of the full path. |
| **AUTHOR** | jsmith | The author of a document from entered metadata. |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| **CC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| **BCC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| **SUBJECT** | | The subject line of the e-mail. |
| **DOCTITLE** | | The extracted document title of a document. |
| **CONVERSATION INDEX** | | ID used to tie together e-mail threads. |
| **IMPORTANCE** | High Importance, Low Importance, Normal, etc. | E-mail Importance Flag |
| **CUSTODIAN** | | The custodian / source of a document. If the documents are de-duped on a global level, this field will contain the name of each custodian from which the document originated. |
| **FILEEXT** | XLS | The file extension of a document. |
| **FILENAME** | Document Name.xls | The file name of a document. |
| **FILETYPE** | MS Excel Spreadsheet | The file type of a document. |
| **FILESIZE** | Numeric | The file size of a document (including embedded attachments). |
| **MD5HASH** | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| **NATIVELINK** | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| **FOREIGNLANGUAGE** | Korean; Japanese; English | Specifies all languages found in the document to the best of the processing software's ability (might not be 100% accurate). |

17

| Field Name | Example/Format | Description |
|---|---|---|
| **FULLTEXT** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate Unicode text file per document. These text files should be named with their bates numbers. **Note**: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |
| **PARENT_BATES** | First Bates identifier of parent document | This PARENT_BATES field should be populated in each record representing an attachment "child" document. |
| **CHILD_BATES** | First Bates identifier of "child" attachment(s); may be more than one Bates number listed depending on number of attachments. | The CHILD_BATES fields should be populated in each record representing a "parent" document.**First Bates identifier of "child" attachment(s); may be more than one Bates number listed depending on number of attachments. |