**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: UNITEDHEALTH GROUP PBM LITIGATION | Case No. 0:16-cv-3352 (JNE/BRT) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

Joseph P. Guglielmo
Erin G. Comite
Carey Alexander
**SCOTT+SCOTT,**
**ATTORNEYS AT LAW, LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
calexander@scott-scott.com

Robert A. Izard
Craig A. Raabe
Christopher M. Barrett
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: 860-493-6292
Facsimile:  860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

*Interim Co-Lead Class Counsel for Plaintiffs*

[Additional Counsel Listed on Signature Page]

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 4

    I.    Defendants unlawfully charge spread and take Clawbacks. ........................... 4

    II.   Defendants' Clawback scheme violates Plaintiffs' plan terms. ...................... 5

LEGAL STANDARDS ...................................................................................... 10

ARGUMENT ...................................................................................................... 10

    I.    Plaintiffs state a claim under ERISA. ........................................................ 10

            A.   ERISA Plaintiffs are entitled to enforce their rights pursuant
                to ERISA § 502(a)(1)(B) (Count I). ..................................................... 12

                  1.   ERISA's exhaustion doctrine does not apply. ............................... 13

                        a.   There is no denial of a claim for benefits ............................. 14

                        b.   There were no "claims" to deny ............................................ 15

                        c.   Defendants never issued a "notice in writing" that a
                            "claim" was "denied." .......................................................... 16

                        d.   Defendants never issued a "writing" "setting forth
                            the specific reasons for such denial." ................................... 17

                        e.   Defendants never issued a denial explaining
                            administrative rights. ............................................................ 17

                        f.   Some plans do not require exhaustion. ................................. 18

                    2.   The Non-ERISA plans do not require exhaustion. ........................ 18

                    3.   Any administrative appeal would be futile ..................................... 19

             B.   Defendants breached their fiduciary duties. ........................................ 22

                    1.   Defendants are fiduciaries. ........................................................... 22

                          a.   Defendants exercised discretion over management
                            of the plans. .......................................................................... 23

b.    Defendants exercised discretion over their compensation...................................................................... 25

c.    Defendants exercised authority or control respecting the management and disposition of plan assets. ........................................................................ 26

d.    Defendants had discretionary authority over certain plans. ............................................................................ 29

e.    The plan terms do not allow Spread or Clawbacks.............. 30

f.    There is no "business affairs" exception.............................. 31

2.    Defendants breached their fiduciary duties. .................................. 32

a.    Defendants violated the plans' terms (Count IV). ............... 32

b.    Defendants breached their duty of loyalty by charging Spread and taking Clawbacks (Count IV). ............ 33

c.    Defendants misrepresented cost-sharing amounts (Count IV). ......................................................................... 35

d.    Defendants engaged in prohibited transactions in violation of ERISA § 406(a) (Count II). ............................... 38

e.    Defendants engaged in prohibited transactions under ERISA § 406(b) (Count III). ...................................... 40

C.    Plaintiffs state discrimination claims under ERISA § 702 (Count V). ............................................................................. 41

D.    Defendants are liable as co-fiduciaries for others' fiduciary breaches (Count VI).................................................................. 43

E.    Defendants are liable as non-fiduciaries (Count VII)............................ 43

II.    Plaintiffs state a claim under RICO § 1962(c) (Count VIII). ........................ 44

A.    The Optum Pharmacy Enterprise is an association-in-fact enterprise............................................................................... 44

1.    The Optum Pharmacy Enterprise's "common purpose" is to provide medically necessary prescription drugs in accordance with plan terms. ........................................................ 45

2. The Optum Pharmacy Enterprise's members have a continuous and ongoing relationship through their shared participation in Defendants' pharmacy network................ 49

B. Defendants conducted the affairs of the Optum Pharmacy Enterprise. ............................................................................ 50

C. Plaintiffs' satisfy Rule 9(b)................................................... 53

1. Plaintiffs allege a scheme to defraud............................. 53

2. Plaintiffs allege Defendants' acts of fraud with particularity..................................................................... 55

III. Plaintiffs state a claim under RICO § 1962(d) (Count IX). ........... 56

IV. Plaintiffs' state law claims are well-pleaded................................... 57

A. Plaintiffs state a claim for unjust enrichment (Count XII). ............... 57

B. Plaintiff Wiltsie states a valid MCPA claim against Optum (Count XIII). ............................................................................ 57

C. Plaintiffs Fellgren and Rabbiner state valid FDUTPA claims (Counts XV & XVII). .............................................................. 58

D. The Non-ERISA Plaintiffs have statutory standing to pursue their MNDTPA claim (Count XVI)........................................... 60

E. Plaintiff Rabbiner's state law claims against Optum are not preempted (Counts XVII & XVIII). ...................................... 62

F. Defendants made material misrepresentations and omissions that are actionable under state law........................................ 64

CONCLUSION ................................................................................................ 67

iii

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Abels v. Farmers Commodities Corp.*,
259 F.3d 910 (8th Cir. 2001) ................................................................ 51, 54

*Abraha v. Colonial Parking, Inc.*,
No. 16-680, 2017 WL 1052558 (D.D.C. Mar. 20, 2017) ........................... 26

*Acosta v. Pac. Enters.*,
950 F.2d 611 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992).................... 26, 28

*Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*,
781 F. Supp. 2d 837 (D. Minn. 2011) ........................................................ 55

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) ................................................................................... 62

*Am. Auto. Ass'n, Inc. v. Advanced Am. Auto Warranty Servs., Inc.*,
No. 09-CV-12351, 2009 WL 3837234 (E.D. Mich. Nov. 16, 2009) ........................ 58

*Angevine v. Anheuser-Busch Cos. Pension Plan*,
646 F.3d 1034, 1037 (8th Cir. 2011) ......................................................... 15

*Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*,
171 F. Supp. 3d 1092 (D. Colo. 2016) ....................................................... 20

*Atlas Pile Driving Co. v. DiCon Fin. Co.*,
886 F.2d 986 (8th Cir. 1989) ............................................................... 53, 55

*Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund*,
237 F.3d 270, 273 (3d Cir. 2001)............................................................... 23

*In re Beacon Assocs. Litig.*,
818 F. Supp. 2d 697 (S.D.N.Y. 2011)......................................................... 41

*Berger v. Edgewater Steel Co.*,
911 F.2d 911 (3d Cir. 1990)...................................................................... 20

*Bickley v. Caremark Rx, Inc.*,
461 F.3d 1325 (11th Cir. 2006) ................................................................. 20

*In re Blue Cross of W. Pa. Litig.*,
942 F. Supp. 1061 (W.D. Pa. 1996).................................................... 15, 17

iv

*Bouboulis v. Transp. Workers Union of Am.*,
442 F.3d 55 (2d Cir. 2006) ........................................................................ 23

*Bowe v. Pub. Storage*,
106 F. Supp. 3d 1252 (S.D. Fla. 2015) ..................................................... 59

*Bowen v. City of N.Y.*,
476 U.S. 467 (1986) ................................................................................... 22

*Boyle v. United States*,
556 U.S. 938 (2009) ............................................................................. 45, 48

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ............................................................ *passim*

*Bridgeman v. Grp. Health Plan, Inc.*,
No. 4:07cv0282, 2007 WL 1527545 (E.D. Mo. May 23, 2007) ........... 22, 27

*Brown v. J.B. Hunt Transp. Servs., Inc.*,
586 F.3d 1079 (8th Cir. 2009) ..................................................... 17, 18, 19

*Burris v. IASD Health Servs. Corp.*,
No. 4-94-CV-10845, 1995 WL 843859 (S.D. Iowa Oct. 2, 1995) ...... 15, 21

*C.I.R. v. Keystone Consol. Indus., Inc.*,
508 U.S. 152 (1993) ................................................................................... 38

*Cafaro v. Zois*,
No. 16-15522, 2017 WL 2258535 (11th Cir. May 23, 2017) .................... 66

*Christopher v. Hanson*,
No. Civ. 09-3703, 2011 WL 2183286 (D. Minn. June 6, 2011) ............... 57

*Conley v. Pitney Bowes*,
34 F.3d 714 (8th Cir. 1994) ......................................................... 14, 17, 18

*Consol. Beef Indus., Inc. v. N.Y. Life Ins. Co.*,
949 F.2d 960 (8th Cir. 1991) ................................................................... 22

*Corsini v. United Healthcare Corp.*,
965 F. Supp. 265 (D.R.I. 1997) .......................................................... 17, 20

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*,
528 F.3d 1001, 1026-27 (8th Cir. 2008) .............................................. 46, 47

*U.S. ex rel. Costner v. United States*,
   317 F.3d 883 (8th Cir. 2003) ................................................................. 67

*CSX Transp., Inc. v. Easterwood*,
   507 U.S. 658 (1993) ............................................................................... 62

*Curcio v. John Hancock Mut. Life Ins. Co.*,
   33 F.3d 226 (3d Cir. 1994) ..................................................................... 23

*Dabney v. Chase Nat. Bank of City of N.Y.*,
   196 F.2d 668 (2d Cir. 1952) ................................................................... 34

*Dadd v. Anoka Cty.*,
   No. 14-4933, 2015 WL 3935897 (D. Minn. June 24, 2015),
   *aff'd*, 827 F.3d 749 (8th Cir. 2016) ....................................................... 10

*Dardaganis v. Grace Capital Inc.*,
   889 F.2d 1237 (2d Cir. 1989) ................................................................. 33

*Day v. Bowen*,
   No. C-1-87-800, 1990 WL 357274 (S.D. Ohio Jan. 22, 1990) ................ 22

*Deacon v. Pandora Media, Inc.*,
   901 F. Supp. 2d 1166 (N.D. Cal. 2012) ................................................. 58

*Delk v. Durham Life Ins. Co.*,
   959 F.2d 104 (8th Cir. 1992) .................................................................. 13

*DePina v. Gen. Dynamics Corp.*,
   674 F. Supp. 46 (D. Mass. 1987) ........................................................... 22

*U.S. ex rel. Donegan v. Anesthesia Assocs. of Kans. City, PC*,
   No. 4:12-CV-0876, 2014 WL 3729641 (W.D. Mo. July 28, 2014) .......... 67

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
   725 F.3d 406 (3d Cir. 2013) ................................................................... 34

*Eversole v. Metro. Life Ins. Co., Inc.*,
   500 F. Supp. 1162 (C.D. Cal. 1980) ...................................................... 27

*F.H. Krear & Co. v. Nineteen Named Trs.*,
   810 F.2d 1250 (2d Cir. 1987) ................................................................. 26

*Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.*,
   985 F. Supp. 2d 262 (D. Conn. 2013),
   *aff'd*, 557 F. App'x 53 (2d Cir. 2014) .................................................... 63

*Fechter v. Conn. Gen. Life Ins. Co.*,
   800 F. Supp. 182 (E.D. Pa. 1992) ............................................................... 27

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)................................................................. 47, 48

*FirsTier Bank, N.A. v. Zeller*,
   16 F.3d 907 (8th Cir. 1994) ........................................................................ 23

*Fish v. GreatBanc Tr. Co.*,
   749 F.3d 671 (7th Cir. 2014) ...................................................................... 38

*Fort Halifax Packing Co., Inc. v. Coyne*,
   482 U.S. 1 (1987)......................................................................................... 34

*Fresenius Med. Care Holdings, Inc. v. Tucker*,
   704 F.3d 935 (11th Cir. 2013) .................................................................... 62

*Friedman v. 24 Hour Fitness USA, Inc.*,
   580 F. Supp. 2d 985 (C.D. Cal. 2008) ........................................................ 48

*Golden Star, Inc. v. Mass Mut. Life Ins. Co.*,
   22 F. Supp. 3d 72 (D. Mass. 2014) ............................................................. 26

*Grindstaff v. Green*,
   133 F.3d 416 (6th Cir. 1998) ................................................................ 27, 28

*Grodotzke v. Seaford Ave. Corp.*,
   17 F. Supp. 3d 185 (E.D.N.Y Apr. 28, 2014) ............................................. 38

*Grp. Life & Health Ins. Co. v. Royal Drug Co.*,
   440 U.S. 205 (1979)..................................................................................... 58

*Gunderson v. ADM Inv'r Servs., Inc.*,
   230 F.3d 1363 (8th Cir. 2000) .................................................................... 55

*Handeen v. Lemaire*,
   112 F.3d 1339 (8th Cir. 1997) ........................................................ 44, 50, 56

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
   530 U.S. 238 (2000)............................................................................... 38, 43

*Hemi Grp., LLC v. City of N.Y., N.Y.*,
   559 U.S. 1 (2010) ................................................................................... 10, 22

*Henry v. Champlain Enters., Inc.*,
    445 F.3d 610 (2d Cir. 2006) ....................................................................... 38

*Holling-Fry v. Coventry Health Care of Kan. City*,
    No. 07-0092-CV, 2007 WL 2908753 (W.D. Mo. Oct. 4, 2007) ................................. 20

*Howard v. Shay*,
    100 F.3d 1484 (9th Cir. 1996) ................................................................... 38

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
    No. 13-2644, 2014 WL 943224 (D. Minn. Mar. 11, 2014) ......................................... 61

*IT Corp. v. Gen. Am. Life Ins. Co.*,
    107 F.3d 1415 (9th Cir. 1997) ................................................................... 30

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*,
    441 F.3d 552 (8th Cir. 2006) ..................................................................... 67

*Kevin Breyer Concrete, Inc. v. Beutel*,
    No. A09-1547, 2010 WL 2732384 (Minn. Ct. App. Apr. 13, 2010) ............................ 57

*Knowlton v. Anheuser-Busch Cos., LLC*,
    No. 4:13-CV-210, 2014 WL 2009076 (E.D. Mo. May 16, 2014) ......................... 14, 20

*Krueger v. Ameriprise Fin., Inc.*,
    No. 11-cv-02781, 2012 WL 5873825 (D. Minn. Nov. 20, 2012) ................................ 39

*Laughlin v. Target Corp.*,
    No. 12-489, 2012 WL 3065551 (D. Minn. July 27, 2012) (Ericksen, J.) ................... 60

*Leigh v. Engle*,
    727 F.2d 113 (7th Cir. 1984) ..................................................................... 27

*Leimkuehler v. Am. United Life Ins. Co.*,
    713 F.3d 905 (7th Cir. 2013) ..................................................................... 23

*LePage v. Blue Cross & Blue Shield of Minn.*,
    No. Civ. 08-584, 2008 WL 2570815 (D. Minn. June 25, 2008) ................................ 33

*Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*,
    982 F.2d 1031 (6th Cir. 1993) ................................................................... 24

*Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*,
    88 F. Supp. 3d 985 (D. Minn. 2015) ........................................................... 48

*Liss v. Lewiston-Richards, Inc.*,
    478 Mich. 203 (2007).................................................................................. 57

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996).................................................................................. 30

*Lowen v. Tower Asset Mgmt., Inc.*,
    829 F.2d 1209 (2d Cir. 1987)......................................................... 27, 38, 40

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).................................................................................. 60

*In re Luna*,
    406 F.3d 1192 (10th Cir. 2005) ................................................................ 27

*Lupiani v. Wal-Mart Stores, Inc.*,
    No. 03-5256, 2006 WL 2596055 (W.D. Ark. Sept. 11, 2006) .................... 39

*Mach. Movers, Riggers & Mach. Erectors, Local 136 v. Nationwide Life Ins. Co.*,
    No. 03 C 87072006, 2006 WL 2927607 (N.D. Ill. Oct. 10, 2006)............. 43

*Maher v. Sempris, LLC*,
    No. 13-2202, 2014 WL 4749186 (D. Minn. Sept. 24, 2014)...................... 61

*Marshall v. Snyder*,
    572 F.2d 894 (2d Cir. 1978)..................................................................... 38

*Martorella v. Deutsche Bank Nat'l Tr. Co.*,
    161 F. Supp. 3d 1209, 1216-18 (S.D. Fla. 2015)....................................... 59

*Maxa v. John Alden Life Ins. Co.*,
    No. Civ. 3-90-410, 1992 WL 212171 (D. Minn. Apr. 17, 1992) ................ 36

*McConocha v. Blue Cross & Blue Shield of Ohio*,
    898 F. Supp. 545 (N.D. Ohio 1995).................................................... 25, 36

*Med. Card. Sys. v. Equipo Pro Convalencia*,
    587 F. Supp. 2d 384 (D.P.R. 2008)........................................................... 62

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996).................................................................................. 62

*Midw. Cmty. Health Serv., Inc. v. Am. United Life Ins. Co.*,
    255 F.3d 374 (7th Cir. 2001) .................................................................... 27

*Mooney v. Allianz Life Ins. Co. of N. Am.*,
    244 F.R.D. 531 (D. Minn. 2007)................................................................. 61

*Morris v. ADT Sec. Servs.*,
    580 F. Supp. 2d 1305 (S.D. Fla. 2008) ..................................................... 66

*Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*,
    48 F.3d 1066 (8th Cir. 1995) ...................................................................... 56

*N.L.R.B. v. Amax Coal Co.*,
    453 U.S. 322 (1981)..................................................................................... 34

*N.Y. City Health & Hosps. Corp. v. WellCare of N.Y., Inc.*,
    801 F. Supp. 2d 126 (S.D.N.Y. 2011).................................................. 62, 63

*Nat'l Org. for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994)..................................................................................... 48

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
    635 F. Supp. 2d 1170 (S.D. Cal. 2009)..................................................... 45

*Nestlé Purina Petcare Co. v. Blue Buffalo Co. Ltd.*,
    181 F. Supp. 3d 618 (E.D. Mo. 2016)........................................................ 52

*In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*,
    433 F. Supp. 2d 172 (D. Mass. 2006) ....................................................... 47

*O'Leary v. Miller & Schroeder Invs. Corp.*,
    No. A03-1003, 2004 WL 237377 (Minn. Ct. App. Feb. 10, 2004) ........... 57

*Olson v. E.F. Hutton & Co., Inc.*,
    957 F.2d 622 (8th Cir. 1992) ...................................................................... 23

*Pedinelli v. Turnberry Park Estates Inc.*,
    No. 324331, 2016 WL 370043 (Mich. Ct. App. Jan. 28, 2016) ................ 58

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..................................................................................... 30

*Phillips v. Kaiser Found. Health Plan, Inc.*,
    953 F. Supp. 2d 1078 (N.D. Cal. 2011) ..................................................... 63

*Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*,
    722 F.3d 861 (6th Cir. 2013) ...................................................................... 26

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So. 2d 773 (Fla. 2003) ......................................................................... 66

*Podpeskar v. Makita U.S.A. Inc.*,
    No. Civ. 15-3914, 2017 WL 1169533 (D. Minn. Mar. 28, 2017) .............................. 66

*Porous Media Corp. v. Midland Brake, Inc.*,
    220 F.3d 954 (8th Cir. 2000) ........................................................................ 13

*Radtke v. Misc. Drivers & Helpers Union Local # 638 Health, Welfare, Eye
    & Dental Fund*,
    No. 10-4175, 2011 WL 1193383 (D. Minn. Feb. 11, 2011), Report .......................... 43

*Reich v. Compton*,
    57 F.3d 270 (3d Cir. 1995) ........................................................................... 40

*Reich v. Hall Holding Co., Inc.*,
    990 F. Supp. 955 (N.D. Ohio 1998), *aff'd sub nom.*,
    *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002) .................................. 38

*Reich v. Lancaster*,
    55 F.3d 1034 (5th Cir. 1995) ........................................................................ 26

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ................................................................................... 50

*Reynolds v. Condon*,
    908 F. Supp. 1494 (N.D. Iowa 1995) .............................................................. 48

*Ries v. Humana Health Plan, Inc.*,
    No. 94 C 6180, 1995 WL 669583 (N.D. Ill. Nov. 8, 1995) ........................... 25, 34, 35

*Rochow v. Life Ins. Co. of N. Am.*,
    780 F.3d 364 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 480 (2015) ............................ 34

*Rodgers v. Data Transmission Network*,
    No. 8:10CV46, 2011 WL 1134670 (D. Neb. Mar. 25, 2011) .................................... 19

*Rosemann v. Sigillito*,
    956 F. Supp. 2d 1082 (E.D. Mo. 2013) ............................................................ 46

*Roth v. Life Time Fitness, Inc.*,
    No. 15-3270, 2016 WL 3911875 (D. Minn. July 14, 2016) ...................................... 60

*Rudek v. Presence Our Lady of Resurrection Med. Ctr.*,
    No. 13 C 06022, 2014 WL 5441845 (N.D. Ill. Oct. 27, 2014) .................................. 63

*Ruppert v. Principal Life Ins. Co.*,
  No. 4:07-CV-00344, 2009 WL 5667708 (S.D. Iowa Nov. 5, 2009) ........................... 28

*Schimmelfennig v. Gaedke*,
  223 Minn. 542 (1947) ...................................................................................... 57

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
  473 U.S. 479 (1985) .................................................................................... 44, 48

*Semente v. Empire Healthchoice Assurance, Inc.*,
  No. 14 CV 5823, 2016 WL 4621076 (E.D.N.Y. Sept. 6, 2016) ................................. 18

*Shea v. Esensten*,
  107 F.3d 625 (8th Cir. 1997) ...................................................................... 35, 37, 38

*Sixty-Five Sec. Plan v. Blue Cross & Blue Shield of Greater N.Y.*,
  583 F. Supp. 380 (S.D.N.Y. 1984) .................................................................. 25, 34

*Smith v. United Healthcare Servs., Inc.*,
  No. Civ. 00-1163, 2003 WL 22047861 (D. Minn. Aug. 28, 2003) ..................... *passim*

*In re: St. Jude Med., Inc.*,
  425 F.3d 1116 (8th Cir. 2005) .............................................................................. 60

*Stalker v. MBS Direct, LLC*,
  No. 10-11355, 2011 WL 797981 (E.D. Mich. Mar. 1, 2011) .................................... 66

*Starbird v. Mercy Health Plans, Inc.*,
  No. 4:07-CV-1050, 2008 WL 2157100 (E.D. Mo. May 22, 2008) ............................ 21

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*,
  427 Fed. App'x 714 (11th Cir. 2011),
  *rev'd in part on other grounds by*
  *State Farm Mut. Auto. Ins. Co. v. Williams*,
  563 Fed. App'x 665 (11th Cir. 2014) ..................................................................... 59

*Sun Life Assurance Co. of Can. v. Diaz*,
  No. 3:14-cv-01685, 2015 WL 1826088 (D. Conn. Apr. 22, 2015) ............................ 25

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  309 F.R.D. 482 (D. Minn. 2015) ........................................................................... 61

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154, 1160 (D. Minn. 2014) ........................................................... 60

*Target Corp. v. LCH Pavement Consultants, LLC,*
   No. Civ. 12-1912, 2013 WL 2470148 (D. Minn. June 7, 2013) ........................... 44, 61

*U.S. ex rel. Thayer v. Planned Parenthood of the Heartland,*
   765 F.3d 914 (8th Cir. 2014) ..................................................... 55

*Trs. of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.,*
   783 F. Supp. 899 (D.N.J. 1992) ................................................... 27

*Uhm v. Humana, Inc.,*
   620 F.3d 1134 (9th Cir. 2010) .............................................. 19, 62, 63, 64

*Uland v. City of Winsted,*
   570 F. Supp. 2d 1114 (D. Minn. 2008) ........................................... 55, 56

*United States v. Applied Pharmacy Consultants, Inc.,*
   182 F.3d 603 (8th Cir. 1999) ..................................................... 57

*United States v. Cianci,*
   378 F.3d 71 (1st Cir. 2004) ...................................................... 48

*United States v. Ervasti,*
   201 F.3d 1029 (8th Cir. 2000) ................................................... 53

*United States v. McArthur,*
   850 F.3d 925 (8th Cir. 2017) .................................................. 47, 56

*United States v. Steffen,*
   687 F.3d 1104 (8th Cir. 2012) ................................................... 54

*United States v. Turkette,*
   452 U.S. 576 (1981) ....................................................... 45, 48, 50

*United States v. Van Doren,*
   800 F.3d 998 (8th Cir. 2015) .................................................... 54

*Varity Corp. v. Howe,*
   516 U.S. 489 (1996) ............................................................ 35

*W.S. Badcock Corp. v. Myers,*
   696 So. 2d 776 (Fla. Dist. Ct. App. 1996) ........................................ 59

*Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.,*
   639 F. Supp. 2d 371 (S.D.N.Y. 2009) ............................................. 41

*Werdehausen v. Benicorp Ins. Co.*,
  487 F.3d 660 (8th Cir. 2007) ................................................ 41

*Wilczynski v. Lumbermens Mut. Cas. Co.*,
  93 F.3d 397 (7th Cir. 1996) ................................................ 19

*Witt v. La Gorce Country Club, Inc.*,
  35 So. 3d 1033 (Fla. Dist. Ct. App. 2010) ................................ 65

*World Bus. Lenders, LLC, v. Palen*,
  No. 16-cv-329, 2017 WL 2560918 (D. Minn. June 13, 2017) .................. 66

*In re Xerox Corp. ERISA Litig.*,
  483 F. Supp. 2d 206 (D. Conn. 2007) ...................................... 43

*Young v. Wells Fargo & Co.*,
  671 F. Supp. 2d 1006 (S.D. Iowa 2009) ................................... 48

*Zine v. Chrysler Corp.*,
  236 Mich. App. 261 (Mich. 1999) ......................................... 65

## STATUTES, RULES, REGULATIONS

29 C.F.R. § 2560.503-1(j)(4)-(5) .......................................... 17

42 C.F.R.
  § 423.128(a) .......................................................... 63
  § 423.2264 ............................................................ 63

18 U.S.C. § 1961(4) ....................................................... 45

29 U.S.C.
  § 1002 (14)(A)-(B) .................................................... 39
  § 1002(21)(A)(i) .................................................. 23, 26
  § 1002(21)(A)(i)-(iii) ................................................ 23
  § 1103 ................................................................ 27
  § 1104(a)(1)(i)-(ii) .................................................. 33
  § 1104(a)(1)(D) ....................................................... 33
  § 1105(a)(1)-(3) ...................................................... 43
  § 1106(a)(1)(C) ....................................................... 38
  § 1106(a)(1)(D) ....................................................... 39
  § 1106(b)(1),(3) ...................................................... 41
  § 1109(a) ............................................................. 29
  § 1133(1) ......................................................... 16, 17
  § 1133(2) ............................................................. 14

§ 1182 ........................................................................................................................... 41

§ 1182(a)(1)(A)-(H) ..................................................................................................... 42

42 U.S.C.

§ 423.2262 .................................................................................................................... 63

§ 1395w-26(b)(3) ......................................................................................................... 62

§ 1395w-112(g) ............................................................................................................ 62

FED. R. CIV. P. 8(a)(2) ...................................................................................................... 10

FLA. STAT. § 501.212(4)(a)-(b) ........................................................................................ 59

MCL

§ 445.904(1)(a) ............................................................................................................. 57

§ 445.904(1)(b) ............................................................................................................. 58

§ 445.904(3) .................................................................................................................. 58

§ 500.106 ....................................................................................................................... 58

§ 500.2003(1) ................................................................................................................ 58

MINN. STAT. § 325D.45 .................................................................................................... 61

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants' Motion to Dismiss Consolidated Class Action Complaint ("Motion") (ECF No. 67).[1]

## INTRODUCTION

Defendants provide prescription drug benefits through health plans. Pursuant to these plans, Defendants required pharmacies to secretly charge copayments, coinsurance, and deductible cost-sharing amounts that exceeded the amounts Defendants paid pharmacies for prescription drugs – known as spread ("Spread"). Defendants then secretly required pharmacies to pay the Spread back to them, clawing it back as undisclosed profit ("Clawback" and the "Clawback scheme"). Defendants **admit** to their "implementation of the 'clawback' mechanism" (ECF No. 69, Defendants' Memorandum in Support of Motion ("Br.") at 1 n.1.), establishing that Plaintiffs' claims are not only plausible, but are true. Indeed, Defendants have previously engaged in these improper practices. *Smith v. United Healthcare Servs., Inc.*, No. Civ. 00-1163, 2003 WL 22047861 (D. Minn. Aug. 28, 2003) (granting summary judgment against Defendants for engaging in a substantially similar copayment overcharge scheme). Since Plaintiffs' plans unambiguously **prohibit** Defendants from charging Spread or taking Clawbacks, Plaintiffs have stated claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), the Racketeering Influenced and Corrupt Organizations Act ("RICO"), and state statutory and common laws.

---

[1]   As used herein, "Plaintiffs" and "Defendants" have the meanings as defined in Plaintiffs' Consolidated Class Action Complaint (the "Complaint") (ECF No. 52) ¶¶ 1, 20-38. Paragraphs in the Complaint are cited to as "¶ __."

In response to Plaintiffs' well-pleaded allegations, Defendants argue that Plaintiffs' plans authorized Defendants to charge Spread and take Clawbacks. Defendants' argument should be rejected because they rely on mischaracterizations of Plaintiffs' claims and plan documents and Plaintiffs' claims, misstatements of law, and erroneous factual arguments that cannot be resolved in the context of a motion to dismiss. Moreover, Defendants' bold assertion that their self-motivated receipt of Spread through Clawbacks is "irrelevant" to Plaintiffs' claims (Br. at 1), demonstrates their blatant misunderstanding of Plaintiffs' actual claims and the underlying plan documents, which conclusively prohibit Defendants' conduct.

With respect to Plaintiffs' specific claims, the ERISA Plaintiffs have stated claims because their plans unambiguously limit their cost-sharing amounts for any drug to the price Defendants paid pharmacies for that drug.  Defendants acted as fiduciaries and exercised discretionary control over the practices establishing the Spreads and Clawbacks.  Thus, even if Defendants' incomplete reference to Plaintiffs' plans were accurate, they still could not avoid liability because Defendants exercised their fiduciary control over plan assets to further their own pecuniary gain and breached ERISA's fiduciary duty of loyalty by implementing the Clawback scheme over the interests of plan participants.  Moreover, Defendants have engaged in prohibited transactions as their practices violate the plans' terms, which specifically prohibit charging copayment amounts in excess of what Defendants paid to pharmacies.  Lastly, as this Court found in *Smith*, ERISA Plaintiffs are not required to exhaust administrative remedies.

Plaintiffs have also stated claims under RICO. Plaintiffs have properly pleaded that Defendants used various means, including gag clauses, to control an association-in-fact enterprise with a valid common purpose by forcing participating pharmacies to surreptitiously charge Spread and take Clawbacks. Plaintiffs have also properly pleaded the Defendants committed the predicate acts of mail and wire fraud in furtherance of the Clawback scheme.

Defendants' challenges to the Non-ERISA Plaintiffs' statutory and common law claims also fail. First, Plaintiffs state a claim for unjust enrichment where no contract governs the misconduct alleged. Second, no exemption bars Plaintiff Wiltsie's Michigan Consumer Protection Act ("MCPA") claim against Optum or Plaintiffs Fellgren and Rabbiner's Florida Deceptive and Unfair Trade Practices ("FDUTPA") claims, where neither Optum (a pharmacy benefit manager ("PBM")) nor United (an administrative services organization ("ASO") for Plaintiff Fellgren's self-insured plan) is regulated as an insurer. Third, the Non-ERISA Plaintiffs have statutory standing to sue under the Minnesota Deceptive Trade Practices Act ("MNDTPA"), where Defendants' have significant ties to Minnesota. Fourth, Plaintiff Rabbiner's claims against Optum are not expressly preempted under Medicare Part D where there is no statutory provision or regulation applicable to a non-insurer's conduct. Finally, Plaintiffs plausibly allege actionable affirmative misrepresentations and omissions that Defendants were under a duty to disclose regarding the Clawback scheme. Plaintiffs satisfy Rule 9(b) by pleading 100 detailed representative examples of Defendants' fraudulent conduct. Moreover, Defendants' unqualified admission to their "implementation of the 'clawback'

3

mechanism" (Br. at 1 n.1), provides a more than sufficient indicia of reliability to support Plaintiffs' allegations.

In sum, the Court should deny Defendants' Motion.

## FACTUAL BACKGROUND

### I.  Defendants unlawfully charge spread and take Clawbacks.

Defendants execute their Clawback scheme through the PBM Optum and its network of participating pharmacies.  (¶¶ 52-67.)  When Plaintiffs present a prescription at a participating pharmacy, the pharmacy and Optum electronically exchange information via interstate wire allowing Optum to adjudicate the claim and determine whether the drug and Plaintiff are covered and, if so, the cost-sharing amount the pharmacy must collect from Plaintiffs.  (¶ 58.)

Under the terms of Optum's Provider Manual, pharmacies "*must* charge" whatever inflated cost-sharing amount OptumRx directs, "*and only* this amount." (¶ 302(b).)[2]  Optum's Provider Manual and Defendants' contracts with participating pharmacies prohibit pharmacists from disclosing "reimbursement pricing information, as well as prices paid to [pharmacies]."  (¶¶ 82-86.)  Pharmacists can be fined or terminated from the network if they fail to adhere to these terms.  (¶¶ 86-87.)  Defendants could not have implemented the Clawback scheme without either Optum's pharmacy network or Optum's coercive ability to ensure pharmacies' compliance with its directives through gag clauses and punitive provisions.

---

[2]     Unless otherwise indicated, all emphasis is added and internal citations and quotation marks are omitted.

Plaintiffs allege numerous examples describing how Defendants operate their Clawback scheme.  (¶¶ 73-75.)  Plaintiffs Sohmer, Stevens, Holm, Fellgren, and Hawk alleged in detail the dates and times of their prescription drug purchases, the cost-sharing amounts Defendants fraudulently directed pharmacies to collect from Plaintiffs, and explained that Defendants' Clawback scheme was fraudulent because these cost-sharing amounts exceeded the amounts Defendants paid to pharmacies and that Plaintiffs should have paid under the terms of their plans.  (¶¶ 20-35, 128-42, 318.)  Other Plaintiffs alleged the drugs for which Defendants charged Spread (¶ 107) and their dates and locations of purchase.  (¶¶ 127-42.)

Defendants admit to their "implementation of the 'clawback' mechanism" (Br. at 1 n.1), which, in an email reproduced by FOX 8, Defendants referred to as their "Pharmacy Reimbursement Overpayment program."  (¶ 104.)  After journalists exposed the Clawback scheme, Defendants issued a misleading statement claiming that Class "members will pay the lowest price at the pharmacy and the repayment program will no longer be necessary." (¶ 105.)  Defendants' scheme, however, remains ongoing.  (Br. at 1 n.1.)

## II.   Defendants' Clawback scheme violates Plaintiffs' plan terms.

Plaintiffs' plans define the cost-sharing amounts Plaintiffs must pay to receive medically necessary prescription drugs.  (¶¶ 107, 112-20.)  As set forth below, despite Defendants' mischaracterization of the plans, each of Plaintiffs' plans provides that Plaintiffs' cost-sharing amounts ***should not exceed the amount Defendants pay***

*participating pharmacies*.   Plaintiffs' plans define these cost-sharing amounts by reference to either the "lesser of three" or "lesser of two" factors.

Plaintiffs' plans use capitalized terms that have specific definitions.  The plans instruct Plaintiffs to be "familiar with all of the Plan's terms and conditions"[3] (*see, e.g.*, Guglielmo Decl., Ex. A (ECF No. 80, Ex. 2) at 30), and specifically state that "[c]ertain capitalized words have special meanings. We have defined these words in the [general] Definitions Section[.]"  (*See, e.g.*, *id.* at 157.)  Like a complaint, plans must be read as a whole.  (*See id.* Ex. B (ECF No. 80, Ex. 3) at 184 ("Many of the sections of this Policy are related to other sections of the document. You may not have all of the information you need by reading just one section.").)

Plaintiffs Ellington, Fellgren, and Sohmer's cost-sharing amounts are determined by the "lesser of three" factors.  The three factors are: (1) a stated copay amount; (2) the pharmacy's Usual and Customary Charge ("U&C"); or (3) the "Prescription Drug Cost" that Defendants "agreed to pay the Network Pharmacy."  (*See, e.g.*, *id.* Ex. C (ECF No. 80, Ex. 20) at 1992.)  "Prescription Drug Cost" is defined as the "rate" that Defendants "agreed to pay its Network Pharmacies[.]"  (*Id.* at 2000.)  Accordingly, cost-sharing amounts under these plans may not exceed the amount Defendants agreed to pay participating pharmacies for each drug.

Defendants mischaracterize plans that refer to "Eligible Expenses" and "Allowed Amounts" as "lesser of two" plans.  (Br. at 14.)  Plaintiffs Alston, Chambers, Hawks,

---

[3]     Excerpts of relevant plan language are attached as exhibits to the Declaration of Joseph P. Guglielmo ("Guglielmo Decl.").

Mastra, Sohmer, Stevens, Wiltsie, and Youngs have plans that refer to "Eligible Expenses." Their Prescription Drug Riders ("Riders") state that Plaintiffs will pay the "lower of" the "Copayment" amount or the U&C. (*See, e.g.*, Guglielmo Decl., Ex. B (ECF No. 80, Ex. 3) at 267.) The Riders do not define "Copayment" and instead explicitly refer to the plans' general definitions. (*See id.* at 287.) There, "Copayment" is defined as the "lesser of" the "applicable Copayment" or the "Eligible Expense." (*Id.* at 234.)

Defendants' exclusive focus on the plans' reference to a "Copayment" completely ignores the plans' reference to "Eligible Expenses," which are "determined by [Defendants] as stated below and as detailed in the Schedule of Benefits." (*Id.* at 236.) The Schedule of Benefits states that "Eligible Expenses are our contracted fee(s) with th[e] provider." (*Id.* at 262.)[4] Accordingly, for plans that refer to "Eligible Expenses," Plaintiffs pay the lesser of: (1) a pharmacy's U&C; (2) the applicable copayment; or (3) **Defendants' "contracted fee(s) with [the] provider**." (*Id.*)[5]

---

[4]     In addition to Defendants' admission that the "Eligible Expense" clause applies through their reliance on the "Covered Health Services" "Copayment" (Br. at 7), the plans define "Rider" as "any attached written description of additional Covered Health Services," and that definition specifically discusses the "Rider" for "Outpatient Prescription Drugs." (*See, e.g.*, Guglielmo Decl., Ex. B (ECF No. 80, Ex. 3) at 240, 287.) Thus, since prescription drugs are "Covered Health Services," the "Covered Health Services" "Copayment" definition, with its "Eligible Expense" clause, is incorporated through the "Rider" definition.

[5]     Any argument that the plans' reference to a "set dollar amount" limits cost-sharing amounts to the fixed amounts listed in the plans (*e.g.*, $10) would be wrong. First, it contradicts the plans' language described above. Second, the "contracted fee" is also a "set dollar amount." Third, the phrase "set dollar amount" distinguishes a copayment from coinsurance, which is a "percentage" rather than a "set dollar amount." (*See* Guglielmo Decl., Ex. B (ECF No. 80, Ex. 3) at 234.)

Similarly, Plaintiff Mohr's 2014 plan refers to "Allowed Amounts." Her Rider states that she will pay the "lower of" the "applicable Cost-Sharing" or the U&C. (*Id.* Ex. D (ECF No. 80, Ex. 10) at 974.) The Rider does not define "Cost-Sharing," referring instead to the plan's general definitions. (*See id.* at 980.) The general definition for "Cost-Sharing" defines the "Allowed Amount" as "the amount we have negotiated with the Participating Provider" (*id.* at 945) and provides: "when the Allowed Amount for a service is less than the Copayment, You are responsible for the lesser amount." (*Id.* at 944.) Thus, Plaintiffs whose plans reference the "Allowed Amount" also should not pay more than the amount Defendants agreed to pay participating pharmacies.

Other "lesser than three" plans incorporate provisions mandating that Plaintiffs' cost-sharing amounts should not exceed the amount Defendants pay participating pharmacies. Plaintiff Ackerman's Rider refers to: (1) "the applicable Out-of-Pocket Expense"; or (2) the U&C. (*Id.* Ex. A (ECF No. 80, Ex. 2) at 157.) The plan contains a "Usual, Customary and Reasonable (UCR) Charge Rider" that Defendants ignore.[6] (*Id.* at 65.) The UCR Rider states that the U&C for drugs is limited by a third factor: "the amount the provider agrees to accept as reimbursement for the particular covered services, supplies and/or drugs[.]" (*Id.*)

Plaintiff Mohr's 2011-2013 Rider directs that her cost-sharing is the "lower of": (1) "the applicable Out-of-Pocket Expense"; or (2) the U&C. (*See, e.g.*, *id.* Ex. E (ECF No. 80, Ex. 11) at 1077.) The "Out-of-Pocket Expense" description refers to the

---

[6]    The Rider constitutes supplemental coverage that supersedes "any amendment or rider concerning the above-mentioned provisions," including "drugs." (*Id.*)

"Summary of Benefits," which lists alternative "Out-of-Pocket Expense" copayment dollar amounts and specifically states that "Outpatient Prescription Drugs" are "Covered Services" under "Supplemental Coverage." (*Id.* at 1043.) "Covered Services" provides a third factor for Plaintiff Mohr's cost-sharing amounts, limiting copayments to the "contracted fee" with the pharmacy. Although Defendants did not provide the Court with the relevant language, in describing Mohr's "Financial Responsibility" for "Covered Services," her plan states that "Network Providers have agreed to accept our contracted fees as payment in full" and "you will not be responsible for any amount billed in excess of the contracted fee." (*See, e.g.*, *id.* Ex. G at UNH000001387.) Accordingly, Plaintiff Mohr also should not pay any amount for the "Covered Services" of "Outpatient Prescription Drugs" "in excess of the contracted fee." (*Id.*)

The other remaining Plaintiffs' cost-sharing definitions make clear that these amounts also should not have exceeded the amount Defendants paid participating pharmacies. Plaintiff Holm's plan, for example, refers to "Member's Copayment," defined as: (1) the "applicable Copay"; or (2) the ingredient cost, dispensing fee, and tax, which is the amount that Defendants pay participating pharmacies. (ECF No. 71, Ex. 27 at 2836.) Similarly, Plaintiff Rabbiner's Medicare Part D plan states that "[i]f your covered drug costs less than the copayment amount listed in the chart, you will pay th[e] lower price for the drug." (*See, e.g.*, Guglielmo Decl., Ex. F (ECF No. 80, Ex. 23) at 2327.)

Thus, contrary to Defendants' mischaracterization of the cost-sharing amounts required by Plaintiffs' plans, ***each*** of Plaintiffs' plans limits Plaintiffs' cost-sharing

amount to the amount Defendants pay participating pharmacies.  That is the amount that "Plaintiffs are entitled to pay [as] member contribution amounts set forth in their plans— nothing more and nothing less."  (Br. at 1.)

## LEGAL STANDARDS

Rule 8 requires only "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Courts must accept "as true the facts pleaded in the complaint," *Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 21 (2010), and "view them in the light most favorable to the plaintiff."  *Dadd v. Anoka Cty.*, No. 14-4933, 2015 WL 3935897, at *3 (D. Minn. June 24, 2015), *aff'd*, 827 F.3d 749 (8th Cir. 2016).  With ERISA, in particular, the court "must also take account of [plaintiffs'] limited access to crucial information" and engage in a "careful and holistic evaluation of an ERISA complaint's factual allegations" to vindicate the statute's "remedial purpose and evident intent to prevent through private civil litigation misuse and mismanagement of plan assets."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597-98 (8th Cir. 2009).

## ARGUMENT

**I.      Plaintiffs state a claim under ERISA.**

Plaintiffs Ackerman, Chambers, Ellington, Hawks, Holm, Mastra, Mohr, Sohmer, and Youngs ("ERISA Plaintiffs") assert several claims under ERISA.  These claims flow from the fact that, as discussed above, Defendants unlawfully charged Spread and took Clawbacks.  Count I asserts a claim under ERISA § 502(a)(1)(B), which allows participants or beneficiaries to enforce and clarify their rights under plan terms.  As

discussed in § I(A), ERISA Plaintiffs have been denied their rights each time Defendants have charged Spread and taken Clawbacks.   Other than disputing Plaintiffs' factual allegations by claiming that the plans permitted this unlawful conduct, Defendants' principal response is that ERISA Plaintiffs were required to exhaust the remedy of appealing a denial of benefits, even though Defendants never issued a denial of benefits from which ERISA Plaintiffs could appeal and exhaustion would be futile.

Counts II-IV and VI assert claims against Defendants as fiduciaries.   Defendants are fiduciaries for four reasons.   First, as discussed in § I(B)(1)(a), Defendants exercised discretionary authority and control by setting cost-sharing amounts that exceeded the amounts allowed under the plans and by requiring pharmacies to collect Spread.   Second, as discussed in § I(B)(1)(b), Defendants exercised discretion to set and take their own compensation.   Third, as discussed in § I(B)(1)(c), Defendants exercised non-discretionary authority or control over plan assets, the cost-sharing amounts, and the ASO and insurance policy contracts.   Fourth, as discussed in § I(B)(1)(d), Defendants had discretionary authority concerning the computation of payments under certain plans.

Count IV alleges breach of Defendants' fiduciary duties.   As discussed in § I(C), Defendants breached their fiduciary duties by charging Spread and taking Clawbacks. Defendants' response that the plans authorized them to do so fails because the plans do not allow them to charge Spread or take Clawbacks, much less violate ERISA.

Counts II and III allege numerous violations of ERISA's prohibited transaction provisions, which contitute per se violations of ERISA.   As discussed in § I(D),

Defendants respond only by repeating their erroneous refrain that they are not fiduciaries and the transactions do not concern plan assets.

Count V alleges that Defendants discriminated against Plaintiffs by requiring Plaintiffs to pay excessive cost-sharing contributions in violation of ERISA § 702. This Count does not depend on Defendants' fiduciary status. As discussed in § I(E), Defendants discriminated against ERISA Plaintiffs who paid Spread.

Counts VI and VII are derivative of Plaintiffs' other fiduciary-based claims and allege that Defendants are liable for the breaches committed by their co-Defendants. As discussed in § I(F)-(G), these claims should not be dismissed for the same reasons Counts II-IV should not be dismissed.

## A. ERISA Plaintiffs are entitled to enforce their rights pursuant to ERISA § 502(a)(1)(B) (Count I).

Plaintiffs seek to enforce the terms of their plans that preclude copayments from exceeding the actual cost of drugs. Defendants first respond by selectively quoting language from so-called "lesser of two" plans in an erroneous attempt to argue that such plans *allowed* Defendants to charge Spread and take Clawbacks. (Br. at 13-16.)[7] However, as detailed *supra* at 5-10, Defendants ignore other key portions of Plaintiffs' plan documents, including certain defined terms that make clear that cost-sharing payments for prescription drugs may not be higher than the amounts Defendants pay

---

[7] Notably, Defendants concede that Plaintiffs, whose plans contain "lesser of three" language, *see supra* at 5-10, state valid claims. (Br. at 17 n.16.).

pharmacies for the drugs.   Accordingly, the unambiguous language of these plans prohibit Defendants' Clawback scheme.[8]

Defendants' primary response to Plaintiffs' § 502(a)(1)(B) claim (and non-ERISA claims) is that Plaintiffs were required to exhaust administrative remedies before "filing a lawsuit for benefits."   (Br. at 2).   Because Plaintiffs received their prescription drug benefits, this action is not a "lawsuit for benefits."   It is an action to recover fraudulent overcharges.   Consequently, exhaustion does not apply and, even if it did, Plaintiffs are excused because exhaustion would be futile.

### 1.     ERISA's exhaustion doctrine does not apply.

The exhaustion doctrine does not apply to the ERISA Plaintiffs' claims because:

(a)   Exhaustion applies only to a denial of benefits and a claim to recover Spread is not a claim for benefits;

(b)   For Plaintiffs' "In-Network" prescription drug purchases, Plaintiffs *did not* submit a "claim," which is a condition precedent to "denial" of a "claim" and appeal therefrom;

(c)   For exhaustion to apply, ERISA *requires* "notice in writing" that a "claim" has been "denied" and Defendants never provided written notice;

---

[8]     Even if the contractual language were ambiguous, resolving ambiguities is a factual inquiry that is inappropriate on a motion to dismiss.   *See Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 959 (8th Cir. 2000) (the "meaning of an ambiguous contract term is a fact question for the jury").   Moreover, because the language in question is contained within an ERISA plan, any ambiguities that remain at trial must be construed against Defendants.   *See Delk v. Durham Life Ins. Co.*, 959 F.2d 104, 106 (8th Cir. 1992).

(d)  ERISA ***requires*** the "writing" to "set[] forth the specific reasons for such denial" and Defendants issued no such writing;

(e)  ERISA ***requires*** the "writing" to describe the administrative procedures and Defendants issued no such "writing";

(f)  A number of Plaintiffs' plans do not require exhaustion; and

(g)  Administrative appeal would be futile and is excused.[9]

### a.   There is no denial of a claim for benefits.

Claim review and appeal procedures apply only where a participant's "claim for benefits has been denied."  29 U.S.C. § 1133(2).[10]  Plaintiffs are not claiming they were denied a benefit.  They received their prescription drugs, but were charged unlawful Spread.  (¶¶ 2, 8, 20-35, 82-92.)  Accordingly, neither the appeals process nor the exhaustion requirement is triggered.

Defendants made this same argument on strikingly similar facts before this Court and lost.  In *Smith v. United Healthcare Servs., Inc.*, UHC unlawfully charged a copayment Spread and clawed it back.  No. CIV. 00-1163, 2000 WL 1198418 (D. Minn. Aug. 18, 2000).  Before plaintiffs prevailed on liability on summary judgment, the Court denied UHC's motion to dismiss, holding that:

---

[9]   Administrative exhaustion "is not intended to place a meaningless procedural hurdle in front of plaintiffs who desire to bring claims for violations of their rights under ERISA in federal court."  *Knowlton v. Anheuser-Busch Cos., LLC*, No. 4:13-CV-210, 2014 WL 2009076, at *3 (E.D. Mo. May 16, 2014).

[10]   Because ERISA does not explicitly require exhaustion, the Eighth Circuit "require[s] exhaustion in ERISA cases only when it was required by the particular plan involved."  *Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994).

14

> the exhaustion policy does not apply here because Smith was never denied a benefit by UHC. Smith was given his prescription medications upon request, just not at the promised premium cost. Because he had never been denied a benefit, Smith had nothing to administratively appeal.

*Id.* at *4. Defendants fail to disclose that they previously lost **this** issue in **this** Court.

Courts have repeatedly held that exhaustion does not apply in cases involving hidden spread and "secret discounts" that impact cost-sharing payments. *See, e.g.*, *Burris v. IASD Health Servs. Corp.*, No. 4-94-CV-10845, 1995 WL 843859, at *3-4 (S.D. Iowa Oct. 2, 1995); *see also In re Blue Cross of W. Pa. Litig.*, 942 F. Supp. 1061, 1064 (W.D. Pa. 1996). Because Plaintiffs' "received prescription drug benefits," this is not a suit for benefits; it is to recover Spread and Clawbacks and exhaustion does not apply. (*See* ¶¶ 11, 193-200.)[11]

### b.      There were no "claims" to deny.

Because Plaintiffs received prescription drug benefits through network pharmacies, the plans explicitly provide that there was no "claim" for benefits. (*See, e.g.*, ECF No. 80, Ex. 21 at 2090 ("If you receive Covered Health Services from a Network provider, you do not have to file a claim.  We pay these providers directly."); *id.* Ex. 4 at 305 ("When you receive Covered Health Services from Network providers, you do not have to submit a claim to us."); *id.* Ex. 10 at 988 ("When You receive services from a Participating Provider you will not need to submit a claim form."); *id.* Ex. 3 at 223 ("We pay Network providers directly for your Covered Health Services."); *id.* Ex. 18 at 1788

---

[11]      Unlike the plaintiff in *Angevine v. Anheuser-Busch Cos. Pension Plan* (Br. at 21), Plaintiffs here already "received" their prescription drug benefits (¶ 2) and, as discussed below, no "claim" was necessary to receive the benefits and Defendants never issued a denial of benefits that would trigger an appeal.  646 F.3d 1034, 1037 (8th Cir. 2011).

(similar language).)   Accordingly, there were no "claims" to deny and thus, no benefit denial to appeal.

Even the language upon which Defendants rely demonstrates that administrative procedures concern only benefit eligibility for treatments or procedures, not concealed, system-wide, overcharges.   For instance, many plans state explicitly that "Appeals Determinations" are "based *only* on whether or not Benefits are available under the Policy for the ***proposed treatment or procedure***."   (*See, e.g.*, *id.* Ex. 6 at 684.)   Other plans have an "External Review Program," in which the participant must state "[t]he service that was denied."   (*See, e.g.*, *id.* Ex. 3 at 227.)   Because Plaintiffs ***received*** their drugs without having to file a claim, and there is no dispute concerning whether the drug benefit was "available," and no service was denied, the administrative process is not implicated.

### c. Defendants never issued a "notice in writing" that a "claim" was "denied."

An administrative remedy cannot be pursued unless the participant is notified that a claim has been denied.   (*See, e.g.*, *id.* at 225 ("Your first appeal request must be submitted to us within 180 days after you receive the . . . ***claim denial***.").)   ERISA also explicitly requires "notice in writing" that a "claim for benefits under the plan has been denied[.]"   29 U.S.C. § 1133(1).   Assuming Plaintiffs made a "claim," which they did not, Defendants never issued a written denial of any of claim.   Instead, they accepted and processed Plaintiffs' drug transactions.   (*See* ¶¶ 11, 198-200.)

Defendants cannot have it both ways.  If Defendants' Clawback scheme does not involve a claim for benefits, then administrative procedures do not apply.  If Defendants' scheme concerns a claim for benefits, then Defendants failed to give notice that they denied the claims.  "When an ERISA-governed plan fails to comply with its antecedent duty under § 1133 to provide participants with notice and review, aggrieved participants are not required to exhaust their administrative remedies before filing a lawsuit for benefits under § 1132(a)."  *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009); *Conley*, 34 F.3d at 717-18; *Smith*, 2000 WL 1198418, at *5; *Corsini v. United Healthcare Corp.*, 965 F. Supp. 265, 269 (D.R.I. 1997); *see also In re Blue Cross*, 942 F. Supp. at 1064.  Accordingly, exhaustion does not apply.

### d.   Defendants never issued a "writing" "setting forth the specific reasons for such denial."

Defendants also failed to explain the "specific reasons" allegedly justifying the excessive charges.  ERISA requires a written denial notice (which was never sent) to "set[] forth the specific reasons for such denial[.]"   29 U.S.C. § 1133(1).   Indeed, Defendants know from their prior litigation that this failure is fatal to their dismissal arguments.  *Smith*, 2000 WL 1198418, at *5.

### e.   Defendants never issued a denial explaining administrative rights.

ERISA also requires any written denial to notify the participant of the internal administrative processes – and Defendants did not do so.  *See* 29 C.F.R. § 2560.503-1(j)(4)-(5).  This failure is also fatal to Defendants' dismissal arguments.  *Conley*, 34 F.3d at 718.

**f.      Some plans do not require exhaustion.**

Defendants wrongly contend that "each" of Plaintiffs' plans "require[s]" exhaustion.  (Br. at 2.)  Plaintiff Hawks' plan does not require exhaustion.  (ECF No. 80, Ex. 5 at 570 ("While you are not required to complete the steps specified in *Section 6: Questions, Grievances and Appeals* prior to bringing any legal proceeding or action against us, we encourage you to complete the steps specified in *Section 6: Questions, Grievances and Appeals* prior to bringing any legal proceeding or action against us." (emphasis in original)).)  The only limitation in Plaintiff Ackerman and Mohr's plans is to sue within the statute of limitations period.  (ECF No. 80, Ex. 2 at 58 ("No action at law or in equity may be maintained against Us for any expense or bill unless brought within the statute of limitations for such cause of action."); Guglielmo Decl., Ex. G at UNH000001434 (same).)  Accordingly, Defendants' claim that "each" of Plaintiffs' plans required exhaustion is false.

**2.      The Non-ERISA plans do not require exhaustion.**

Defendants argue that ERISA's claims procedures apply to claims governed by the Patient Protection and Affordable Care Act ("ACA").  (Br. at 19.)  But the exhaustion requirement is judicially-created, not statutory.  *Conley*, 34 F.3d at 714; *Brown*, 586 F.3d at 1085.  No court has imposed ERISA exhaustion requirements to ACA plans and Defendants' argument ignores that some plans are subject to neither the ACA nor ERISA.[12]

---

[12]      Defendants' case says nothing about exhaustion.  It simply recognizes that the ACA incorporated ERISA's requirement that plans offer internal procedures.  *Semente v.*

With respect to Plaintiff Rabbiner's Medicare Part D plan, Defendants claim that exhaustion is required by the Medicare Act. (Br. at 12 n.11, 19-20.) This misconstrues Plaintiff Rabbiner's claim. His claim is not that Optum owes him benefits. His claim is that even if he received all the benefits owed to him, Optum violated state consumer-protection law, committed fraud, and violated RICO by misrepresenting the proper cost-sharing amounts and concealing that Optum wrongfully clawed back the Spread. Accordingly, Plaintiff Rabbiner's claim resembles claims found *not* to require exhaustion in *Uhm v. Humana, Inc.*, where the "basis of [the] claims [was] an injury collateral to any claim for benefits; it [was] the misrepresentations themselves which the Uhms s[ought] to remedy." 620 F.3d 1134, 1145 (9th Cir. 2010).

### 3. Any administrative appeal would be futile.

Plan participants are not "required to exhaust if doing so would prove futile." *Brown*, 586 F.3d at 1085. Defendants never issued the required claim denial or explained why they thought they could charge Spread and take Clawbacks. Moreover, Defendants admit to their systemic "implementation of the 'clawback' mechanism[,]" yet deny that they have done anything wrong. (Br. at 1, 1 n.1.) It is hard to imagine a case in which administrative processes could be more futile.[13]

---

*Empire Healthchoice Assurance, Inc.*, No. 14 CV 5823, 2016 WL 4621076, at *2-3 (E.D.N.Y. Sept. 6, 2016).

[13]   Defendants note that the standard for futility is whether "it is certain that [the participant's] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision," *Brown*, 586 F.3d at 1085 (Br. at 20), but ignore that on a motion to dismiss, the Court must construe the facts in the Complaint in Plaintiffs' favor. *See, e.g.*, *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 404 (7th Cir. 1996); *Rodgers v. Data Transmission Network*, No. 8:10CV46, 2011 WL 1134670, at *5

Moreover, because Defendants' Clawback scheme was a secret long-standing policy, broadly applied to all participants regardless of their personal circumstances, exhaustion would be futile.  (¶¶ 5, 65, 120-21, 123.)  "[N]o purpose would be served" by requiring administrative exhaustion on allegations such as these, where "the challenged practice represents a long-standing policy that has been applied consistently in calculating the co-payment obligations of all Plan participants." *Corsini*, 965 F. Supp. at 269.  (¶¶ 1-14, 193-200.)  *See, e.g.*, *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1110 (D. Colo. 2016); *Holling-Fry v. Coventry Health Care of Kan. City*, No. 07-0092-CV, 2007 WL 2908753, at *2 (W.D. Mo. Oct. 4, 2007); *see also Knowlton*, 2014 WL 2009076, at *5; *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 917 (3d Cir. 1990).

In *Bickley v. Caremark Rx, Inc.*, upon which Defendants rely, the claims administrator did not participate in the alleged misconduct and there was no indication that he was aware of, or would have condoned, it.  461 F.3d 1325, 1330 (11th Cir. 2006).  Contrary to Defendants' suggestion (Br. at 22), *Bickley* did not consider whether a systemic practice rendered an individual appeal futile.  Because exhaustion here would require appealing to an entity that (1) orchestrated and benefited from the Clawback scheme; (2) actively concealed the scheme; and (3) has demonstrated that it believes the scheme is permissible, *Bickley* is not relevant.[14]

---

(D. Neb. Mar. 25, 2011).  Plaintiffs' facts supporting futility are well-pleaded.  (*See* ¶¶ 193-200.)

[14]  In *Davenport v. Harry N. Abrams, Inc.* (Br. at 22), the quoted language addressed the plaintiff's argument that exhaustion was excused because she "lacked access to the

Defendants argue that exhaustion is necessary because it will, on an individual-by-individual basis, "clarify[] the governing plan terms" and "clarify the facts in dispute[.]" (Br. at 18.)  This argument ignores that the Clawback scheme is systemic and applies uniformly to all plan members who purchase the same prescription drugs.  (¶¶ 120-21, 123.)  Furthermore, individual refunds will not give Plaintiffs full relief because they also seek a declaration that the policy is unlawful and an injunction stopping the Clawback scheme.  *See Starbird v. Mercy Health Plans, Inc.*, No. 4:07-CV-1050, 2008 WL 2157100, at *6 (E.D. Mo. May 22, 2008).[15]

In addition, the administrative procedures have time limits for filing claims.  For instance, Plaintiff Sohmer was required to "submit a request for payment of Benefits within 90 days **after the date of service**."  (ECF No. 80, Ex. 21 at 2090.)  She had numerous Clawback transactions in 2015 and early 2016 (¶ 318), but had no idea that she was being overcharged because of Defendants' gag clauses.  (¶¶ 2, 8, 20-35, 82-92.) Under Defendants' secret scheme, even if she had to file a claim, her time to file ran before she knew that she had been defrauded.  For this and other reasons, exhaustion would be futile.  (¶¶ 193-200).  *See Burris*, 1995 WL 843859, at *4, 4 n.5.[16]

---

claims procedures."  249 F.3d 130, 134 (2d Cir. 2001).  Plaintiffs here make no such claim.  Plaintiffs' futility claim is that if they initiated an administrative appeal **at any time**, Defendants certainly would have rejected it.  (¶¶ 193-200.)

[15]    In addition to being futile, administrative proceedings would "likely increase the costs to all."  *Burris*, 1995 WL 843859, at *5.

[16]    While a some plans have language permitting administrative review of cost-sharing disputes (*see, e.g.*, ECF No. 80, Ex. 18 at 1788), because of Defendants' secret Clawback scheme and gag clauses, those Plaintiffs had no way to know in a timely

Finally, Defendants continue to vigorously defend the Clawback policy in litigation, which supports a finding of futility when the policy is a longstanding, broadly applied policy. *See, e.g.*, *Bridgeman v. Grp. Health Plan, Inc.*, No. 4:07cv0282, 2007 WL 1527545, at *4 (E.D. Mo. May 23, 2007); *DePina v. Gen. Dynamics Corp.*, 674 F. Supp. 46, 51 (D. Mass. 1987).[17]

## B. Defendants breached their fiduciary duties.

The duties charged to ERISA fiduciaries are "the highest known to the law." *Braden*, 588 F.3d at 598. Defendants are fiduciaries who violated ERISA by breaching these duties.

### 1. Defendants are fiduciaries.

"The term fiduciary is to be broadly construed." *Consol. Beef Indus., Inc. v. N.Y. Life Ins. Co.*, 949 F.2d 960, 964 (8th Cir. 1991). Regardless of whether someone is named a fiduciary in plan documents, a person is a functional fiduciary if he or she: (1) "***exercises*** any ***discretionary*** authority or discretionary control respecting

---

manner that they had been defrauded. In any event, such review would have been futile given Defendants' argument that Clawbacks are permissible.

[17]  An administrative appeal also would not serve the purposes of exhaustion. "[A]pplication of the exhaustion doctrine is intensely practical. . . . [It] is generally required . . . so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Bowen v. City of N.Y.*, 476 U.S. 467, 484 (1986). None of these policies would be served by requiring exhaustion in this case. *City of N.Y.* involved a challenge to a "systemwide, unrevealed policy." *Id.* at 485. The court held: "Since [members of the class] could not attack a policy of which they were unaware, it would be unfair to penalize them for not exhausting under such circumstances." *Id.* at 468. For the same reasons the court found waiver in *City of N.Y.*, this Court should waive the exhaustion requirement here. *Id.*; *see also Day v. Bowen*, No. C-1-87-800, 1990 WL 357274, at *3 (S.D. Ohio Jan. 22, 1990).

management of such plan"; (2) "*exercises any* authority or control respecting management or disposition of its assets"; or (3) "*has* any *discretionary* authority or discretionary responsibility in the administration of such plan."   29 U.S.C. § 1002(21)(A)(i)-(iii).  *See also Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 625 (8th Cir. 1992);[18] *FirsTier Bank, N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir. 1994).[19]

Defendants are fiduciaries for at least four reasons.  First, Defendants *exercised* discretionary authority or control over plan administration and management, including by controlling computations of prescription drug payments, setting cost-sharing payments greater than the amounts allowed under the plans, and requiring pharmacies to charge Spread and pay Defendants Clawbacks.   29 U.S.C.   § 1002(21)(A)(i).   Second, Defendants exercised discretion to set and take their own compensation by dictating the amount of the Spread and Clawbacks.  *Id.*  Third, Defendants exercised authority or control over plan assets, including participant cost-sharing payments and the ASO contracts and insurance policies.  *Id*. § 1002(21)(A)(ii).  Fourth, Defendants *had* discretionary authority over certain plans.  *Id*. § 1002(21)(A)(iii).

> a.   **Defendants exercised discretion over management of the plans.**

Defendants exercised discretionary authority or control over the management of the plans by, among other things: (1) dictating the amount pharmacies charged Plaintiffs

---

[18]     *Accord Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 63 (2d Cir. 2006); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994).

[19]     *Accord Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund*, 237 F.3d 270, 273 (3d Cir. 2001); *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 912-13 (7th Cir. 2013).

for prescription drugs; (2) setting the amount of the Spread by secretly requiring pharmacies to charge Plaintiffs more for drugs than they should have been charged; (3) requiring pharmacies to collect the Spread from Plaintiffs; (4) requiring pharmacies to remit the "Spread" to Defendants as Clawbacks; (5) setting their own compensation for services performed by dictating Spread and taking Clawbacks; and (6) misrepresenting to Plaintiffs the cost-sharing amounts they would need to pay for prescription drugs. (¶ 153.)   Moreover, Defendants exercised discretion to dictate how much pharmacies "must charge" and "shall" collect from Plaintiffs based on Optum's own Pharmacy Provider Manual.  (¶ 302(b).)

This case is analogous to *Everson v. Blue Cross & Blue Shield of Ohio*, in which plaintiffs alleged that Blue Cross and Blue Shield of Ohio ("Blue Cross") breached its fiduciary duties by forcing plaintiffs to pay excessive copayments.  898 F. Supp. 532 (N.D. Ohio 1994).  The plaintiffs' plans limited copayments to 20% of the provider's reasonable charge, but rather than charge a copayment of 20% of the amount paid to the provider, Blue Cross charged 20% of the billed amount, which did not account for discounts.[20]  The court held that Blue Cross was a fiduciary, with respect to administering claims, through "defendant's secret discount scheme" "which cause[d] insureds to overpay their contractual share of covered health expenses[.]"  *Id.* at 539-40; *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1035 (6th

---

[20]     These *Everson* claims are also analogous to the claims raised here by those Plaintiffs who pay coinsurance rather than copayments (*see* ¶¶ 114-18), which Defendants entirely ignore in their baseless critique of Plaintiffs Ellington and Rabbiner's claims.  (*See* Br. at 16-17.)

Cir. 1993), *on reh'g en banc* (Feb. 23, 1993); *see also McConocha v. Blue Cross & Blue Shield of Ohio*, 898 F. Supp. 545, 550 (N.D. Ohio 1995); *Ries v. Humana Health Plan, Inc.*, No. 94 C 6180, 1995 WL 669583, at *4 (N.D. Ill. Nov. 8, 1995).

Defendants argue that they were not exercising discretion because decisions were executed by computers.  (Br. at 24.)  Indeed, Defendants used their computers to exercise discretion to design and implement the Spread and Clawback scheme, including by making discretionary decisions as to cost-sharing amounts pharmacies were required to charge participants.   That these discretionary decisions were implemented on an automated basis does not affect the fiduciary status arising from Defendants' underlying exercise of discretion.  *See, e.g.*, *Sixty-Five Sec. Plan v. Blue Cross & Blue Shield of Greater N.Y.*, 583 F. Supp. 380, 387-88 (S.D.N.Y. 1984) (defendant was a fiduciary because it had responsibility for implementing the computerized claims processing system and control over information pertinent to the health care program); *Sun Life Assurance Co. of Can. v. Diaz*, No. 3:14-cv-01685, 2015 WL 1826088, at *3 (D. Conn. Apr. 22, 2015) (defendants had discretionary authority to determine "the amount of benefits due" and are "responsible for paying claims under the" plans).

### b.      Defendants exercised discretion over their compensation.

Defendants are fiduciaries because, by determining the amount of the Spread and taking Clawbacks, they exercised discretion in setting and taking their own compensation.  (*See* ¶¶ 153-54.)  "[A]fter a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA

fiduciary with respect to that compensation." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987); *accord Abraha v. Colonial Parking, Inc.*, No. 16-680, 2017 WL 1052558, at *3-4 (D.D.C. Mar. 20, 2017).[21]   Because Defendants exercised discretion to determine the amount of the Spread and required pharmacies to pay Clawbacks, which Defendants took as profit and compensation, Defendants exercised discretionary control over their compensation.[22]

### c.   Defendants exercised authority or control respecting the management and disposition of plan assets.

Even if Defendants did not exercise "discretionary" authority, they were fiduciaries because they exercised "any" authority or control over the management of plan assets, including the cost-sharing payments, ASO agreements, and insurance policies, for pecuniary gain. *See* 29 U.S.C. § 1002(21)(A)(i). Defendants do not contest that they exercised at least some authority and control over cost-sharing payments, ASO agreements, and insurance policies.   Rather, they argue that no plan assets are at issue because the cost-sharing payments are not plan assets.

"ERISA does not expressly define the term 'assets of the plan.'"   *Acosta v. Pac. Enters.*, 950 F.2d 611, 620 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992).   Plan

---

[21]    *See also Reich v. Lancaster*, 55 F.3d 1034, 1049 (5th Cir. 1995); *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 867 (6th Cir. 2013); *accord Golden Star, Inc. v. Mass Mut. Life Ins. Co.*, 22 F. Supp. 3d 72, 81 (D. Mass. 2014).

[22]    That Plaintiffs initiate the transaction by requesting a prescription does not change the fact that as part of the transaction, Defendants exercised discretion to set the Spread and their Clawback compensation.  Similarly, that Defendants entered into contracts with pharmacies to set the amount paid to pharmacies has nothing to do with exercising discretion to charge Spread and take Clawbacks.

assets is a term that should be broadly construed[23] and the ASO agreements and insurance policies certainly qualify. *See, e.g.*, *Trs. of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*, 783 F. Supp. 899, 902 (D.N.J. 1992) (annuity contract plan asset); *Fechter v. Conn. Gen. Life Ins. Co.*, 800 F. Supp. 182, 200 (E.D. Pa. 1992) (insurance policy plan asset); *Eversole v. Metro. Life Ins. Co., Inc.*, 500 F. Supp. 1162, 1165 (C.D. Cal. 1980) (same).[24]  These cases are consistent with the position of the U.S. Department of Labor, which has advised that one standard for identifying plan assets is apply "ordinary notions of property rights."[25]  Because the plans are unquestionably the owners of their own ASO contracts and insurance policies, these contracts and policies constitute ERISA plan assets.  By erroneously focusing solely on the Optum contract *with pharmacies* (Br. at 25 n.26), Defendants ignore the relevant *plan* contracts – *i.e.*, the ASO agreements and insurance policies – which are plan assets.  (¶¶ 109, 180, 188, 190.)

In *Everson*, the court held that the plaintiffs' group health insurance policy was a plan asset, and defendant wrongfully profited by misusing that asset to obtain "undisclosed negotiated discounts with health care providers[.]"  898 F. Supp. at 540.

---

[23]    *See, e.g.*, *Grindstaff v. Green*, 133 F.3d 416, 432 (6th Cir. 1998); *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987); *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984).

[24]    *See also* 29 U.S.C. § 1103 (recognizing insurance contracts and policies are plan assets); *Midw. Cmty. Health Serv., Inc. v. Am. United Life Ins. Co.*, 255 F.3d 374, 377 (7th Cir. 2001) (group annuity contract plan asset).

[25]    Dep't of Labor, Advisory Op. No. 93-14A, 1993 WL 188473, at *4 (May 5, 1993) (plan assets "include any property, tangible or intangible, in which the plan has a beneficial ownership interest[,]" considering "any contract or other legal instrument involving the plan, as well as the actions and representations of the parties involved."); *see also In re Luna*, 406 F.3d 1192, 1199 (10th Cir. 2005).

Defendants here are similarly misusing the ASO agreements and insurance policies (and the attendant access to hundreds of thousands of covered plan participants) as leverage in negotiating Clawbacks with pharmacies and are improperly profiting from their control over management of these plan assets.[26]

Plan participants' cost-sharing payments constitute plan assets. To identify plan assets, "many courts have followed the broad, functional approach of the Ninth Circuit Court of Appeals in its landmark decision of *Acosta*." *Ruppert v. Principal Life Ins. Co.*, No. 4:07-CV-00344, 2009 WL 5667708, at *18 (S.D. Iowa Nov. 5, 2009), *reconsidered in part on other grounds*, 796 F. Supp. 2d 959 (S.D. Iowa 2010). *Acosta* concluded that an item is a plan asset if it "may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries." *Acosta*, 950 F.2d at 620; *accord Grindstaff*, 133 F.3d at 432. Because the excessive cost-sharing payments came at the plan participants' expense, and the Clawbacks were used to benefit Defendants, the cost-sharing payments are plan assets.[27] That the money paid by participants was paid indirectly through pharmacies (Br. at 25) does not change the fact that cost-sharing payments from which the Clawbacks are derived are plan assets.

---

[26]    Defendants' arguments that the ASO agreements are not plan assets fails because the plans provide prescription drug benefits to employees and retained Defendants to provide these benefits pursuant to the ASO agreements. For example, ECF No. 74, Ex. 30 is a contract between Defendants and the plan sponsor pursuant to which Defendants provide services to the plan in connection with the plan providing prescription drug benefits. The ASO agreement, and Defendants' obligations thereunder, are plan assets.

[27]    Notably, unlike the mutual fund revenue sharing fees in *Ruppert*, which are received from a third party investment company, here the copayments came *directly* from plan participants.

Defendants' cases are inapposite.  (Br. at 25.)  *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.* concluded that rebates obtained by a PBM ***from a drug manufacturer*** were not plan assets, but did not consider whether copayments paid by participants were plan assets.  474 F.3d 463, 472 n.6 (7th Cir. 2007).  *DeLuca v. Blue Cross Blue Shield of Mich.* did not consider the meaning of the term "plan asset[]," but summarily concluded that excess copayments could not be recovered pursuant to a specific provision of ERISA that addresses recovery for "losses to the plan[,]" and did not acknowledge the *Acosta/Ruppert* test.  No. 06-12552, 2007 WL 1500331, at *3 (E.D. Mich. May 23, 2007); *see also* 29 U.S.C. § 1109(a).  In *Moeckel v. Caremark, Inc.*, the court did not resolve whether payments and rebates constituted plan assets and its focus on "discretion" ignored that fiduciary authority over plan assets need not be discretionary.  622 F. Supp. 2d 663, 691-93 (M.D. Tenn. 2007).  Finally, none of these cases addressed a PBM's misuse or mismanagement of a plan's insurance policy or ASO agreement as leverage to require Clawbacks.

### d.    Defendants had discretionary authority over certain plans.

Plaintiffs' plan documents demonstrate that Defendants had broad discretionary authority.  For example, under Plaintiff Ellington's plan, United was expressly appointed an ERISA fiduciary concerning benefit determinations and payments concerning United UHC provided network "Pharmacy Benefit Services" and "Claims Processing" in connection with those services, including pricing.  (ECF No. 77, Ex. 33 at 2981-82.)  United used the claim procedures and standards that it developed in its discretion.  (*Id.* at

2975.)   Moreover, Huntington Learning Corporation, the plan sponsor, expressly delegated to United "the discretion and authority to use such procedures and standards" in connection with providing "Pharmacy Benefit" and "Claim Processing" services.  (*Id.*)

### e.      The plan terms do not allow Spread or Clawbacks.

Defendants erroneously argue that the plan terms allow Defendants to charge Spread and that Defendants did no more than blindly administer the plans as written.  (Br. at 23-24.)   They similarly argue that they are not fiduciaries, as a result of collecting Spread, because their "agreements with customers" allowed them to do it.  (Br. at 26.) But the Complaint and the unambiguous language of the plans and related contracts confirm that ***Defendants had no right under any plan or contract*** to charge Spread or take Clawbacks.  Defendants' deviation from the plan terms was an exercise of fiduciary discretion, not blind mechanical claim processing.  *See, e.g.*, *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997).[28]

Defendants' authority is inapposite.  *Moeckel* did not consider a claim that the PBM exercised discretion to charge cost-sharing payments greater than the limitations in plan documents.  *See* 622 F. Supp. 2d at 677-80.  To the contrary, *Moeckel* concerned contractually set drug prices that the plan agreed to pay.  *Id.*  *Caremark* concerned three PBM contracts that "fixed" the prices of prescription drugs pursuant to a formula built into the contract terms and, accordingly, the plaintiff "agreed to pay set prices for the drugs[.]"   474 F.3d at 472-73.   Accordingly, unlike here, Caremark did not exercise

---

[28]      None of the cases cited by Defendants concerned violations of a plan's express language.  *See Pegram v. Herdrich*, 530 U.S. 211, 223 (2000); *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996).

discretion in setting drug prices.  *DeLuca v. Blue Cross Blue Shield of Mich.* concerned separate agreements negotiated with healthcare providers, rather than the exercise of discretion concerning performance of plan terms.  628 F. 3d 743, 745-46 (6th Cir. 2010). *Pharm. Care Mgmt. Ass'n v. Rowe* did not address whether all PBM functions were "non-discretionary" (*contra* Br. at 24), but instead concluded that certain obligations imposed by state law were not discretionary responsibilities that would subject such conduct to ERISA duties and, thus, ERISA preemption.  429 F.3d 294 (1st Cir. 2005). *Rowe* did not consider anything like the administration of prescription drug plans or the exercise of discretion concerning cost-sharing payments.

### f.  There is no "business affairs" exception.

In an apparent attempt at misdirection, Defendants argue that they were conducting their own business affairs in negotiating which drugs were covered by the plans and appeared on formulary lists.  (Br. at 25-26.)  However, regardless of whether a PBM is a fiduciary when it negotiates drug formularies, tiers, or prices, PBMs are fiduciaries when they exercise discretion over the amounts they charge plan participants or use plan assets as leverage in negotiating Clawbacks.  Defendants cite *Caremark* for the proposition that a PBM is not a fiduciary in negotiating drug prices with drug companies, but in *Caremark,* the amounts charged to plans was agreed to by the plans, 474 F.3d at 472-73, and thus, the PBM did not exercise discretion in setting the amounts charged.[29]  Moreover, *Caremark* did not address claims regarding Clawbacks paid by

---

[29]     By agreeing to pay a fixed amount, the plaintiff agreed to let Caremark keep any difference between the amount the plaintiff paid Caremark and the amount Caremark

participants or the use of plan assets as leverage to command Clawbacks that resulted in participants paying more.

In *Am. Drug Stores, Inc. v. Harvard Pilgrim Health Care, Inc.* (Br. at 26), an insurer excluded a pharmacy from its participating pharmacy network and defendants argued that the claims were preempted by ERISA.  973 F. Supp. 60 (D. Mass. 1997). The court reasoned that the practice did not concern "benefit calculations," but instead concerned "the organization and offering of restricted pharmacy networks[,]" which "should be seen as part of the carrier's own administration rather that its administration of ERISA plans."  *Id.* at 68.  Because this case concerns "benefit calculations," among other things, *American Drug Stores* actually supports Plaintiffs' position.

Defendants represent that in "similar cases," courts recognize that a party is not an ERISA fiduciary by collecting spread (Br. at 26), but those cases are distinguishable because: (1) defendants were expressly permitted by the respective plan documents to collect spread; (2) defendants did not overcharge ***patients*** in violation of plan terms; (3) rebates were obtained from drug manufacturers and were not Clawbacks of plan assets paid by plan participants; and (4) courts did not consider whether a PBM could use plan assets as leverage in extracting its own Clawbacks.

### 2.     Defendants breached their fiduciary duties.

### a.     Defendants violated the plans' terms (Count IV).

Defendants were obligated to discharge their duties "in accordance with the

---

paid the pharmacies.  *Id.* at 473-74.  The opposite is true here, as the contracts provide that participants should pay no more than the amount the pharmacy is paid.

documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of . . . subchapter [I] and subchapter III [of Title 29, Chapter 18]."   29 U.S.C. § 1104(a)(1)(D).   By charging Spread, Defendants violated the express language of the plans and, therefore, breached their fiduciary duties. *See LePage v. Blue Cross & Blue Shield of Minn.*, No. Civ. 08-584, 2008 WL 2570815, at *6 (D. Minn. June 25, 2008); *Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1242 (2d Cir. 1989).

Although *Alves v. Harvard Pilgrim Health Care, Inc.*, upon which Defendants rely, addressed a claim that co-payments exceeded drug prices, it did ***not*** address plan terms that forbade cost-sharing payments that exceeded amounts paid to pharmacies.   204 F. Supp. 2d 198, 204, 208-09 (D. Mass. 2002).   To the contrary, the copay in *Alves* was a fixed amount, regardless of the amount actually paid to the pharmacy, and was not subject to change based on defendant's discretion.   Indeed, *Alves* supports Plaintiffs.   *See also id.* at 207 ("What is 'due' to [a beneficiary] under the policy is, in the first instance, defined by the terms of the policy." (quoting *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 56 (1st Cir. 1999))).

### b.    Defendants breached their duty of loyalty by charging Spread and taking Clawbacks (Count IV).

Section 404(a)(1) of ERISA requires that a fiduciary act "solely in the interest of the participants and beneficiaries" of a plan and for the "exclusive purpose" of "providing benefits" and "defraying reasonable expenses."   29 U.S.C. § 1104(a)(1)(i)-(ii).   These fiduciary standards "must be enforced with uncompromising rigidity" and were

"designed to prevent a [fiduciary] from being put into a position where he has dual loyalties, and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 330, 334 (1981).   In particular, the duty of loyalty was intended to "safeguard employees from such abuses as self-dealing[.]" *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 15 (1987).

Because Defendants required pharmacies to charge Spread and take Clawbacks for Defendants' own financial benefit, they breached the duty of loyalty.  (*See also* ¶¶ 180, 262.)  *See, e.g.*, *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013); *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 382 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 480 (2015); *Dabney v. Chase Nat. Bank of City of N.Y.*, 196 F.2d 668, 670 (2d Cir. 1952).  Similarly, Defendants failed to act "solely in the interest of" plan participants because they used plan assets – specifically, the ASO agreements and insurance policies, as leverage to maximize their Clawbacks when dealing with pharmacies.  (*See, e.g.*, ¶¶ 246, 291.)

In *Ries*, Humana sought to recover the entire amount billed to plaintiff for medical treatment, $10,276, even though Humana satisfied those bills for less than $1,929.  1995 WL 669583, at *1-2.  Plaintiff claimed Humana wrongfully sought more than it actually paid.  *Id.* at *2.  The court held that: "***A fiduciary's covert profiteering at the expense of insureds is inconsistent with its duties of acting 'solely in the interest of the participants and beneficiaries,' and of refraining from engaging in self-dealing***."  *Id.* at *7; *see also Everson*, 898 F. Supp. at 538-40; *Sixty-Five Sec. Plan*, 583 F. Supp. at 387-88.

*Alves* did not consider whether a fiduciary breached its duty of loyalty by charging copayments in excess of amounts permitted by plans.  (*Contra* Br. at 27.)  Nor did *Alves* consider whether a PBM may use plan assets as leverage to negotiate larger Clawbacks. Moreover, nothing suggests that profits Defendants earn through their Clawback scheme are used to offset the costs of high-price drugs (which at best creates a factual dispute).[30]

c.     **Defendants misrepresented cost-sharing amounts (Count IV).**

Defendants breached their duty of loyalty by making numerous false and misleading statements concerning Plaintiffs' cost-sharing amounts.  (*See, e.g.*, ¶¶ 5, 106(j), 133(g), 198, 242, 251, 283, 318.)  Moreover, Defendants failed to disclose the correct cost-sharing amounts or the Clawback scheme's existence (¶ 264), which are distinct fiduciary breaches.  (*Contra* Br. at 27-28.)  ERISA's duty of loyalty "requires an ERISA fiduciary to communicate any material facts which could adversely affect a plan member's interests."  *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997) (citing cases).[31] *See also Braden*, 588 F.3d at 598; *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996); *Ries*, 1995 WL 669583, at *7.  Every time a Clawback victim filled a prescription, Defendants misrepresented the true cost-sharing amount by requiring the pharmacy to change and collect the Spread and then misrepresented such amounts Plaintiffs' Explanations of

---

[30]     *Alves* stated that cross-subsidies of high priced drugs may not be per se improper and were proper under the specific terms of the *Alves* plan, which provided for fixed, nondiscretionary copay amounts.  They are not proper under the plans here.  Indeed, if Defendants wanted to cross-subsidize prescription drug purchases by keeping the Spread, they should have adopted cost-sharing language like in *Alves*.

[31]     *Shea* recognized that a participant has an interest in knowing about financial incentive schemes that influence benefit decisions.  *See id.*

Benefits. (¶¶ 17, 242, 250, 314.) Additionally, Plaintiffs' plan documents do not reflect Defendants' actual practices of charging Spread and taking Clawbacks. (*See* ¶ 251(a).)

In *McConocha*, the court considered "whether defendant breached a duty to plaintiffs by not informing them of its practice of computing copayments before applying the discounts to the hospital charges[.]" 898 F. Supp. at 550. The court concluded:

> [Blue Cross and Blue Shield] violated its duty not to mislead plaintiffs when it failed to inform plaintiffs about the discounts and their impact on the percentage of the copay obligation. The presence of a discounting scheme which increases the copay percentage is a material fact about which plaintiffs should have been told. [Blue Cross and Blue Shield]'s silence was contrary to its fiduciary duty to ensure that its subscribers were informed about the true nature, extent, and significance of their copay obligation.

*Id.* at 551. The same is true here, as Defendants have, on a systematic basis, blatantly misrepresented and failed to disclose Spread and Clawbacks.

Defendants cite (Br. at 28) a single, unreported district court decision that declined to require "individualized notice[,]" *Maxa v. John Alden Life Ins. Co.*, No. Civ. 3-90-410, 1992 WL 212171, at *3 (D. Minn. Apr. 17, 1992), but that case did not address a fiduciary duty to disclose generally and predates Eighth Circuit precedent expressly recognizing the duty. In any event, Defendants already provide individualized notice in that they require pharmacies to charge and collect the Spread for each prescription.

*Wilson v. Sw. Bell Tel. Co.* recognized a duty to disclose material information and only declined to require disclosure of inapposite information regarding whether an employer *might* offer a new severance plan *in the future*. 55 F.3d 399, 406 (8th Cir. 1995). It has nothing to do with misrepresentations concerning *existing* practices concerning *existing* benefits. Defendants' reliance on regulatory disclosure requirements

(Br. at 28 (citing 29 C.F.R. § 2520.102-3(j)(3))), fails because the fiduciary duty to disclose is "[i]n addition to ERISA's express disclosure requirements[.]" *Shea*, 107 F.3d at 628.

Plaintiffs additionally allege that Defendants failed to disclose that participants could have paid less by paying out-of-pocket.  (¶ 303.)  Defendants characterize these allegations as conclusory (Br. at 28), but because Defendants admitted that they charge excessive Spread that was many times more than the cost of the drugs (Br. at 1), their contention is without merit.[32]

Equally nonsensical is Defendants' argument that they had no duty to disclose proper cost-sharing amounts because that information would not enable participants to make benefit choices.  (Br. at 29 & n.29.)  But, if ERISA Plaintiffs knew that they were being overcharged, they would have demanded a lower price or not purchased the drug. Moreover, even if Plaintiffs' cost-sharing amounts were not excessive, Defendants still had a duty to disclose the Clawback scheme because Plaintiffs have an interest in ensuring that their fiduciaries do not have dual loyalties and are not self-dealing with plan assets.[33]

---

[32]     Plaintiff Hawks, for example, alleged that when purchasing a covered prescription drug through his plan, he was charged a $30 copay, while when purchasing the exact same drug at the pharmacy's retail cash price, he was charged only $12.  (First Amended Class Action Complaint ¶¶ 130-37, *Fellgren v. UnitedHealth Group, Inc.*, No. 0:16-cv-03914 (Jan. 20, 2017) (ECF No. 27).)  To the extent the Court finds Plaintiffs' pleadings as to this point insufficient as to any Plaintiff, Plaintiffs respectfully request leave to amend to add such allegations to the operative pleading.

[33]     The duty to disclose is not *limited* to information "which affect[s] participants' ability to make informed decisions about their benefits[,]" *Braden*, 588 F.3d at 600, as it extends to "*any material facts* which could adversely affect a plan member's interests."

> **d.     Defendants engaged in prohibited transactions in violation of ERISA § 406(a) (Count II).**

ERISA § 406 supplements an ERISA fiduciary's general duties. *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241-42 (2000). To provide additional protection, Congress enacted per se prohibitions against certain transactions. *See* 29 U.S.C. § 1106; *C.I.R. v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993); *See also Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006); *Grodotzke v. Seaford Ave. Corp.*, 17 F. Supp. 3d 185, 194 (E.D.N.Y Apr. 28, 2014).[34] Plaintiffs claim that Defendants violated § 406(a) in two ways:

**<u>ERISA § 406(a)(1)(C)</u>:** Section 406(a)(1)(C) provides that a fiduciary shall not cause a plan to engage in a transaction if it knows, or should know, that the transaction constitutes the payment of direct or indirect compensation in the furnishing of services by a party in interest to a plan. 29 U.S.C. § 1106(a)(1)(C). Defendants violated the provision because they took compensation while providing prescription drug coverage services to the plans. (¶¶ 237-49.)

---

*Shea*, 107 F.3d at 628. Defendants cite *Hecker v. Deere & Co.*, but there the court merely concluded that a participant does not have an interest in knowing the post-collection distribution of a fee among ***non-fiduciary*** service providers. 556 F.3d 575, 584 (7th Cir. 2009).

[34]     Although ERISA provides for exemptions from § 406(a), strict adherence to the exemptions ensures that Congress' goal of preventing abuse is not undermined. *See, e.g.*, *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996); *Reich v. Hall Holding Co., Inc.*, 990 F. Supp. 955, 966-67 (N.D. Ohio 1998), *aff'd sub nom.*, *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002). The exemptions are affirmative defenses which the defendant must prove. *See Lowen*, 829 F.2d at 1215; *Marshall v. Snyder*, 572 F.2d 894, 900 (2d Cir. 1978); *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 685 (7th Cir. 2014); *Braden*, 588 F.3d at 600-02. ERISA does not provide any exemptions from the relevant portions of § 406(b).

Each time a Plaintiff filled a prescription, the Plaintiff's plan engaged in a prescription drug coverage transaction pursuant to which Defendants provided services and took Clawbacks. Defendants caused the plan to engage in the coverage transaction in connection with managing pharmacy benefits on behalf of the plan, and were fiduciaries that knowingly charged Spread and took Clawbacks.[35] Defendants are parties in interest because they are fiduciaries and/or provided prescription drug insurance and/or administrative "services." 29 U.S.C. § 1002 (14)(A)-(B). Defendants, as both parties in interest and fiduciaries, engaged in prohibited transactions when they implemented the Clawback scheme. *See, e.g.*, *Braden*, 588 F.3d at 585.[36]

**ERISA § 406(a)(1)(D):** Plaintiffs also allege a claim under § 406(a)(1)(D), which provides that a fiduciary shall not cause a plan to engage in a transaction if it knows, or should know, that the transaction constitutes the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]" 29 U.S.C. § 1106(a)(1)(D). Defendants violated this provision when they caused the plans to charge Spread that they took as Clawbacks. (¶ 245.)

---

[35]   Defendants may argue that the copayment and Clawback scheme do not constitute plan transactions. This argument fails because the plans provide prescription drug benefits to employees, the plan terms control the amounts that participants should pay in copayments, and Defendants enacted the Clawback scheme through their authority as plan service providers. (*See, e.g.*, ECF No. 74, Ex. 30 (A contract between Defendants and a plan sponsor pursuant to which Defendants provide services to the plan in connection with the plan providing prescription drug benefits.).)

[36]   *See also Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781, 2012 WL 5873825, at *20 (D. Minn. Nov. 20, 2012); *Lupiani v. Wal-Mart Stores, Inc.*, No. 03-5256, 2006 WL 2596055, at *3 (W.D. Ark. Sept. 11, 2006) (same).

Defendants' only response to Plaintiffs' § 406(a) claims is to repeat their contentions that they are not fiduciaries, and that the transactions do not concern plan assets – the latter of which is irrelevant to § 406(a)(1)(C) claims.  (Br. at 29.)  As discussed above, these arguments should be rejected.

### e.  Defendants engaged in prohibited transactions under ERISA § 406(b) (Count III).

"Section 406(b) prohibits a plan fiduciary from engaging in various forms of self-dealing."  *Reich v. Compton*, 57 F.3d 270, 287 (3d Cir. 1995).  "Its purpose is to 'prevent[ ] a fiduciary from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries.'"  *Id.* (quoting H.R. CONF. REP. NO. 93-1280, at 470 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5089).  These prohibited transaction rules are broadly and strictly construed.  *Lowen*, 829 F.2d at 1213.

Plaintiffs claim that Defendants violated all three subsections of § 406(b):

**ERISA § 406(b)(2):**  Section 406(b)(2) prohibits fiduciaries from acting on behalf of parties with interests adverse to participants in dealing with a plan.  Defendants violated § 406(b)(2) each time they acted on behalf of each other in requiring pharmacies to charge Spread and pay them Clawbacks in a transaction that was adverse to the interests of participants.  In response to Plaintiffs' allegations, Defendants simply repeat that they are not fiduciaries (Br. at 29) and that Plaintiffs' claims do not concern plan assets.  This latter contention is particularly erroneous, since ERISA § 406(b)(2) applies regardless of whether a transaction involves plan assets.

**ERISA § 406(b)(1), (3):**  Count III also alleges violations of § 406(b)(1), (3), which prohibit a fiduciary from: "(1) deal[ing] with the assets of the plan in his own interest or for his own account[;] . . . or (3) receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."[37]  29 U.S.C. § 1106(b)(1),(3).  Contrary to Defendants' contentions (Br. at 29), these provisions apply because Defendants are fiduciaries and the Clawbacks, ASO contracts, and insurance agreements are plan assets.  Defendants violated ¶ (a)(1) by dealing with these plan assets to take Clawbacks for their own interest and accounts.  (¶ 254.)  Defendants violated ¶ (a)(3) in that they received consideration for their own personal accounts from other parties – including the pharmacies, Plaintiffs, and Class members – in connection with prescription drug transactions involving the assets of the plans.  (¶ 256.)

## C.    Plaintiffs state discrimination claims under ERISA § 702 (Count V).

ERISA § 702, enforced through ERISA § 502(a)(3),[38] prohibits discrimination with regard to premium and contribution payments.  *See* 29 U.S.C. § 1182.  ERISA § 702 provides that:

---

[37]    *See, e.g.*, *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 711 (S.D.N.Y. 2011) (§ 406(b)(3) applies to "to any transaction in which an entity that qualifies as a fiduciary . . . receives compensation for services it provides in its capacity as plan fiduciary from a party dealing with such plan and in connection to a transaction involving plan assets").

[38]    *See Werdehausen v. Benicorp Ins. Co.*, 487 F.3d 660, 668 (8th Cir. 2007) ("[ERISA § 702] may be enforced by an ERISA participant's claim 'to enjoin any act or practice which violates any provision of this subchapter.'" (quoting 29 U.S.C. § 1132(a)(3))); *Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (same).

[a] group health plan, and a health insurance issuer offering health insurance coverage in connection with a group health plan, may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual.

29 U.S.C. § 1182(b)(1).[39]

The Complaint alleges that "Defendants have required plan participants and beneficiaries who have medical conditions that require prescription medications that are subject to Defendants' undisclosed Spreads and Clawbacks to pay greater premiums and contributions than those participants and beneficiaries who *do not* need prescription medications[.]" (¶ 274.) In so doing, Defendants' Clawback scheme rendered *certain* participants' inflated premiums and cost-sharing payments mandatory for continued enrollment in the plans. (¶ 275.)

Defendants misstate Plaintiffs' claim as alleging that that participants "pay different copayments for different drugs." (Br. at 30.) To the contrary, the claim is that these plan participants are required to purchase prescription medications subject to Defendants' Clawback scheme (as opposed to the plan participants who do not require these condition-specific drugs), "in order to be able to use their benefits as enrollees[.]" (¶ 275.) Defendants cannot charge higher premiums and contribution payments to Plaintiffs on the basis of health-related factors. 29 U.S.C. § 1182(b)(1).

---

[39] ERISA defines "health status-related factor" as including: "Health status"; "Medical condition (including both physical and mental illnesses)"; "Claims experience"; "Receipt of health care"; "Medical history"; "Genetic information"; "Evidence of insurability (including conditions arising out of acts of domestic violence)"; and "Disability." 29 U.S.C. § 1182(a)(1)(A)-(H); *see also id.* § 1191b(d)(2).

**D.**     **Defendants are liable as co-fiduciaries for others' fiduciary breaches (Count VI).**

A fiduciary is liable for the fiduciary breach of another fiduciary "if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; . . . by his failure to comply with [ERISA § 404(a)(1),] . . . he has enabled such other fiduciary to commit a breach; or . . . has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."   29 U.S.C. § 1105(a)(1)-(3). Defendants, knowing of the others' breaches, yet failing to remedy them, knowingly participated in them or enabled them.   (*See* ¶¶ 279-87.)   Defendants fail to respond to these claims.   (Br. at 30.)

**E.**     **Defendants are liable as non-fiduciaries (Count VII).**

All Defendants, in the alternative, are liable as ***non***-fiduciaries for the knowing participation in breaches of fiduciary duties under §§ 404 and 406.  *See Harris Trust*, 530 U.S. at 241; *In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 216 (D. Conn. 2007); *Radtke v. Misc. Drivers & Helpers Union Local # 638 Health, Welfare, Eye & Dental Fund*, No. 10-4175, 2011 WL 1193383, at *5 (D. Minn. Feb. 11, 2011), Report and Recommendation adopted 2011 WL 1155117 (Mar. 29, 2011).  Plaintiffs stated a claim because they have alleged "that a fiduciary violated a substantive provision of ERISA and the nonfiduciary knowingly participated in the conduct that constituted the violation."  *Mach. Movers, Riggers & Mach. Erectors, Local 136 v. Nationwide Life Ins.*

*Co.*, No. 03 C 8707, 2006 WL 2927607, at *4 (N.D. Ill. Oct. 10, 2006).  (*See, e.g.*, ¶¶ 288-93.)  Defendants fail to respond to these claims.  (Br. at 30.)

## II.     Plaintiffs state a claim under RICO § 1962(c) (Count VIII).

Plaintiffs plausibly alleged that Defendants engaged in a massive, concealed scheme to defraud that is substantially similar to the one for which Defendants were previously found liable.  *Smith*, 2000 WL 1198418, at *4.   Defendants are recidivist offenders who mischaracterize Plaintiffs' claims and ask the Court to draw all inferences in ***Defendants'*** favor.  (Br. at 33, 37.)  Their Motion should be denied.

Plaintiffs plausibly pleaded that Defendants: "engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Only allegations regarding the predicate acts of mail and wire fraud are subject to Rule 9(b).  *Target Corp. v. LCH Pavement Consultants, LLC*, No. Civ. 12-1912, 2013 WL 2470148, at *2 n.1 (D. Minn. June 7, 2013) (Ericksen, J.).  Plaintiffs have satisfied each of RICO's elements.[40]

### A.     The Optum Pharmacy Enterprise is an association-in-fact enterprise.

Plaintiffs define the Optum Pharmacy Enterprise as an association-in-fact enterprise, "consisting alternatively of OptumRx and the pharmacies in Optum's pharmacy network or consisting solely of such pharmacies."  (¶ 295.)  While RICO "does

---

[40]     Defendants do not dispute that Plaintiffs satisfy the distinctiveness or separateness requirements associated with establishing the existence of an association-in-fact enterprise, the relatedness or continuity requirements needed to establish a pattern of racketeering activity, or that Plaintiffs suffered an adequate injury under RICO.

not specifically define the outer boundaries of the 'enterprise' concept," the "very concept of an association in fact is expansive." *Boyle v. United States*, 556 U.S. 938, 944 (2009). There is "no restriction upon the associations embraced by the definition" of an "enterprise." *United States v. Turkette*, 452 U.S. 576, 580 (1981). The statute reaches "***any*** union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4); *Boyle*, 556 U.S. at 944 ("The term 'any' ensures that the definition has a wide reach.").

Association-in-fact enterprises share three "structural features": (1) a common purpose; (2) "relationships among those associated with the enterprise"; and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. Defendants do not dispute that Plaintiffs have satisfied the longevity requirement. Because the Optum Pharmacy Enterprise also satisfies *Boyle*'s purpose and relationship requirements, the Optum Pharmacy Enterprise constitutes an association-in-fact enterprise.

### 1. The Optum Pharmacy Enterprise's "common purpose" is to provide medically necessary prescription drugs in accordance with plan terms.

Members of an association-in-fact enterprise must share "***a*** common purpose of engaging in ***a*** course of conduct," *Turkette*, 452 U.S. at 583, but RICO "does not require the enterprise participants to share ***all*** of their purposes in common." *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009). The Optum Pharmacy Enterprise's common purpose is to "provide Plaintiffs and Class members medically necessary prescription drugs in accordance with the terms of their plans."

45

(¶ 307.)   Indeed, Defendants admit that OptumRx's core business functions include "providing access to a contracted network of retail pharmacies and the associated processing of a member's retail pharmacy claims." (Br. at 5.)

Defendants argue that, as a matter of law, an association-in-fact enterprise can never exist if its members disagree with *any* of the enterprise's goals.  This is not the law, nor should it be.  It would mean, for example, that a criminal gang held together by fear and coercion could not be a RICO enterprise.  The Eighth Circuit rejected such a result in *United States v. Henley*, where it affirmed the existence of a RICO enterprise where participants were unwillingly coerced into furthering the enterprise's common purpose. 766 F.3d 893, 907 (8th Cir. 2014).

Defendants claim that the Optum Pharmacy Enterprise's "legitimate goals . . . do not create a RICO enterprise" (Br. at 35), but the authority Defendants cite is inapposite. In *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, plaintiffs "failed to establish that the alleged association-in-fact enterprises shared a common purpose of *any* kind— fraudulent or otherwise" because the enterprise's members shared completely "divergent goals."  528 F.3d 1001, 1026-27 (8th Cir. 2008).  Here, as Defendants admit, the Optum Pharmacy Enterprise members share a longstanding and continuing goal of providing prescription drugs to Plaintiffs and Class members.

Defendants' reliance on *Rosemann v. Sigillito*, 956 F. Supp. 2d 1082 (E.D. Mo. 2013), is similarly misplaced.  *Rosemann* did not decide whether the plaintiff pleaded a "common purpose," but instead considered whether an enterprise was distinct from the underlying acts of racketeering activity.  *Rosemann* is not relevant because Defendants do

not claim that the Optum Pharmacy Network has no existence separate and apart from the predicate acts of mail and wire fraud associated with the Clawback scheme.

Unable to credibly dispute that the members of the Optum Pharmacy Enterprise share a common purpose to provide prescription drugs to Plaintiffs and Class members, Defendants contend in a footnote that an association-in-fact enterprise's common purpose must be "fraudulent." (Br. at 35 n.39.) Defendants' claim has no support in RICO's statutory language, applicable Supreme Court precedent, or anything other than oft-rejected dicta from the Second Circuit. (*See id.* (citing *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004)). The Second Circuit stands alone in suggesting that RICO might contain such a requirement, but in doing so, it conflated RICO's purpose requirement with the separate RICO requirement of relatedness. 385 F.3d at 174. Recognizing the potential for doctrinal confusion, *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.* concluded that "a RICO enterprise's common purpose need not be fraudulent in all cases[,]" and cautioned that defendants' contention otherwise "comes dangerously close to conflating the elements of a pattern of racketeering activity and the existence of an enterprise[.]" 433 F. Supp. 2d 172, 181 (D. Mass. 2006).

The Eighth Circuit declined to follow the Second Circuit's dicta when it had the chance. *Craig Outdoor*, 528 F.3d at 1026. Indeed, it has effectively foreclosed any such requirement by reasoning that a motorcycle gang qualified as a RICO enterprise because it "had an independent purpose as a motorcycle club," *i.e.*, as a club with a non-fraudulent purpose. *Henley*, 766 F.3d at 907; *see, e.g.*, *United States v. McArthur*, 850

F.3d 925, 934 (8th Cir. 2017); *United States v. Cianci*, 378 F.3d 71, 88 n.9 (1st Cir. 2004); *Reynolds v. Condon*, 908 F. Supp. 1494, 1510 (N.D. Iowa 1995) ("[T]here is no requirement that the common or shared purpose of the 'RICO enterprise' . . . be illegal activity aimed at this or other victims."); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1028 (S.D. Iowa 2009) (same); *Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*, 88 F. Supp. 3d 985, 1005 (D. Minn. 2015) ("Defendant Clinics comprise an enterprise because their purpose is to make a profit from providing services and treatment for patients."); *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 992, 991 n.2 (C.D. Cal. 2008) (criticizing *Satinwood*).

Moreover, such a restrictive formulation of the enterprise contradicts the directive to give the enterprise an "expansive" interpretation, *Boyle*, 556 U.S. at 944, and to construe RICO liberally to effectuate its remedial purposes, *Sedima,* 473 U.S. at 499. These purposes include rooting out unlawful infiltration of legitimate and illegitimate enterprises alike. *See Turkette*, 452 U.S. at 585. Limiting an enterprise to situations where its common purpose is coextensive with a defendant's fraudulent scheme would undermine the Supreme Court's recognition that an enterprise can alternatively be conceived of as a prize, instrument, victim, *or* perpetrator, *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259, 252 n.1 (1994), and would conflate *Boyle*'s straightforward purpose requirement with RICO's other freestanding requirements.

Accordingly, Plaintiffs' allegation that the common purpose of the Optum Pharmacy Enterprise is to provide prescription drugs to Plaintiffs and Class members in accordance with the terms of their plans satisfies *Boyle*'s purpose requirement.

2.      **The Optum Pharmacy Enterprise's members have a continuous and ongoing relationship through their shared participation in Defendants' pharmacy network.**

The Optum Pharmacy Enterprise is a purpose-built association-in-fact designed to serve Defendants' collective business objectives and benefit participating pharmacies as a group.  Defendants contention that "Plaintiffs fail to allege *a single fact* suggesting that the pharmacy 'spokes' had *any relationship* with one another" fails.  (Br. at 36.)  For example, Defendants' argument that "[t]here is no allegation that these pharmacies . . . knew of each others' existence" or that they had any relationship ignores Optum's Provider Manual, which requires every pharmacy participating in the Optum Pharmacy Enterprise to acknowledge that accepting a claim adjudicated by Defendants "constitutes [the pharmacy's] . . . *acknowledgment of its participation in the applicable network*." (Optum Provider Manual at 44; ¶ 302(a).)

*In re Managed Care Litig.* confirms that members of a health insurer's provider network share sufficient relationships to constitute a RICO enterprise.  185 F. Supp. 2d 1310 (S.D. Fla. 2002).  The enterprise there encompassed a health insurer, health plans, primary physicians, medical specialists, medical laboratories, hospitals, outpatient centers, pharmacies, and home health agencies that contracted with defendant.  *Id.* at 1323.  Because plaintiff alleged a "network . . . through which the [d]efendants deliver health care to the subscribers[,]" plaintiff pleaded sufficient relationships among the enterprise's members.  *Id.* at 1323-24.

As in *Managed Care*, Defendants' pharmacy network here is not "mere conjecture." *Id*. at 1324.  Defendants "openly celebrate[]" their network, "acknowledge[]

their creation of it[,]" and "use[] the network as a public relations vehicle." *Id*. Indeed, UnitedHealth Group boasts that its pharmacy "network consists of more than 67,000 retail pharmacies and includes two mail-order pharmacies, operating in all fifty states." (¶ 57.) Defendants and participating pharmacies symbiotically depend on the network to secure customers and its ongoing existence demonstrates that members of the Optum Pharmacy Enterprise "function as a continuing unit." *Turkette*, 452 U.S. at 583.

Accordingly, Plaintiffs' allegations satisfy *Boyle*'s relationship requirement.

### B.   Defendants conducted the affairs of the Optum Pharmacy Enterprise.

Liability under RICO attaches to any person associated with an enterprise who "conduct[s] or participate[s], directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). To conduct or participate in the conduct of an enterprise, "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). A plaintiff is not required to show that defendant "wielded control over the enterprise." *Handeen*, 112 F.3d at 1348. Rather, Plaintiffs only need to plead that the defendant played "***some*** part in the direction . . . of the enterprise's affairs." *Id.*

Defendants ***admit*** they exerted sufficient control over the Optum Pharmacy Enterprise's affairs such that their "implementation of the 'clawback' mechanism . . . deprived pharmacists, who previously retained the spread, of additional profit." (Br. at 1 n.1.) This admission confirms Plaintiffs' allegation that "Defendants directed the affairs of the Optum Pharmacy Enterprise by implementing what Optum called the 'Pharmacy Reimbursement Overpayment' program." (¶ 305.)

Defendants controlled the Optum Pharmacy Enterprise on a regular and systematic basis by directing participating pharmacies' actions.  In its Provider Manual, OptumRx mandates that pharmacies "***must*** charge" whatever inflated cost-sharing amount OptumRx directs, "***and only*** this amount."  (¶ 302(b).)  Defendants communicate these amounts to pharmacies (who then communicate such amounts to Plaintiffs) through the electronic point-of-sale system Defendants required each participating pharmacy to use. (*Id.*; ¶ 316(b).)  Moreover, Defendants prohibit participating pharmacies from disclosing the Clawback scheme to Plaintiffs and Class members.   (¶ 302(c)-(d).)[41]   If a participating pharmacy fails to adhere to Defendants' dictates, OptumRx can fine the pharmacy $5,000, banish the pharmacy from OptumRx's network, and ban the pharmacy from petitioning for readmission for five years – a request within OptumRx's sole discretion to grant.  (¶ 302(e).)

Plaintiffs' allegations of control are not conjectural.  Defendants have, in writing, threatened to expel participating pharmacies from the Optum Pharmacy Enterprise for attempting to disclose the Clawback scheme to Class members.  (¶¶ 88-89.)  Taken together, these are quintessential examples of conduct of an enterprise.  *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 918 (8th Cir. 2001).

---

[41]   Defendants argue it is "hardly surprising" that they would seek to protect confidential information.  (Br. at 34 n.38.)  Shielding confidential information is only one of several reasonable purposes the Court may infer.  Preventing pharmacists from telling Class members that Defendants were overcharging them and that they could save money, however, has nothing to do with protecting proprietary information.  (¶ 11).  Viewing the allegations in the light most favorable to Plaintiffs, Defendants wielded their confidentiality provision as a sword to gag pharmacists and perpetuate Defendants' fraudulent Clawback scheme.  (¶¶ 82, 318.)

Defendants' authority does not establish that they are immunized under RICO because their relationships with other members of the enterprise possess some contractual dimension. *Dahlgren v. First Nat'l Bank of Holdrege*, stands for the unremarkable proposition that "[b]ankers do not become racketeers by acting like bankers." 533 F.3d 681, 690 (8th Cir. 2008). *Dahlgren* involved a cattle feedlot whose owner was imprisoned after submitting falsified documents to his bank. The feedlot's investors alleged that the bank, through its lending activity, controlled the feedlot by concealing the feedlot's financial condition. The Eighth Circuit held that by lending to the feedlot, the bank was merely conducting its *own* affairs. *Id.* Participating pharmacies, however, are nothing like bank clients. Rather, they are subservient vehicles through which Defendants effectuate their Clawback scheme. In exchange for access to customers, Defendants require participating pharmacies to yield control over disclosures and charges to Plaintiffs and Class members.

*Nestlé Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 181 F. Supp. 3d 618 (E.D. Mo. 2016), is similarly inapposite because it hinged on the absence of any enterprise to control. *Id.* at 634. Because no enterprise existed, the allegations established only "the existence of a commercial partnership that would benefit each defendant's own self-interests." *Id.* at 632. *Nestlé* stated that if, as here, plaintiff had alleged that members of the alleged enterprise *were* involved in one another's affairs, or were required to certify compliance with one another's specifications, the operation and management test would have been satisfied. *Id.*

### C.     Plaintiffs' satisfy Rule 9(b).

Plaintiffs plausibly pleaded that Defendants engaged in the predicate racketeering acts of mail and wire fraud by alleging: "(1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." *Liberty Mutual*, 88 F. Supp. 3d at 998.[42]

### 1.     Plaintiffs allege a scheme to defraud.

A scheme to defraud uses "deceptive practices to induce the unwary to give up money or some other tangible property interest." *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 991 (8th Cir. 1989).  It is identified by reference to a "nontechnical standard, condemning conduct which fails to conform to standards of moral uprightness, fundamental honesty, and fair play." *Id.*

Asking the Court to draw inferences in ***their*** favor, Defendants first argue that Plaintiffs failed to plead that Defendants "made any false statements to the pharmacies" or to Plaintiffs.  (Br. at 32.)  This is wrong as a matter of both fact and law.

First, Plaintiffs alleged that "Optum misrepresented to pharmacies the amount Plaintiffs and Class members were required to pay" (¶ 313(c)), and that Defendants misrepresented to Plaintiffs that they "would pay a certain amount" to receive prescription drugs, knowing full well that they intended to unlawfully charge an inflated

---

[42]     Defendants do not contest that it was reasonably foreseeable that the mails or wires would be used to effectuate the Clawback scheme (¶¶ 58, 316) and admit that the wires were actually used to do so.  (Br. at 5-6 (citing ¶ 58).)  Since Defendants admit that the Clawback scheme's purpose was to generate "additional profit" (Br. at 1 n.1), they also cannot challenge Plaintiffs' allegations of scienter.  (¶¶ 6, 11-12, 104-05, 43-48, 300, 305); *see also United States v. Ervasti*, 201 F.3d 1029, 1035-36 (8th Cir. 2000).

amount. (¶¶ 313, 315, 318 (alleging 100 representative examples of Defendants' fraudulent statements).)

Second, even if Defendants were correct that the Plaintiffs failed to allege factual misrepresentations, "misrepresentations of fact are not necessary to the offense[]" of mail or wire fraud. *Abels*, 259 F.3d at 918.

Third, relying on their incorrect claim, Defendants wrongly argue that, at most, Plaintiffs allege a failure to disclose. (Br. at 33.) The Eighth Circuit, however, distinguishes between simple nondisclosure and fraudulent concealment. *United States v. Steffen*, 687 F.3d 1104, 1114 (8th Cir. 2012). Although mere nondisclosure may not constitute a scheme to defraud (*id.*), "wire fraud under § 1343 can be established by a fraudulent scheme involving concealment." *United States v. Van Doren*, 800 F.3d 998, 1002 (8th Cir. 2015). A scheme to defraud involving concealment uses "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or avert further inquiry into a material matter." *Steffen*, 687 F.3d at 1115.

Defendants' Clawback scheme was designed to actively and fraudulently conceal material information form Plaintiffs and Class members. (¶¶ 6-14, 313, 315, 318.) Indeed, Defendants' Clawback scheme remained hidden until discovered by investigative journalists. (¶¶ 81, 92-106, 197-98, 201-04.) Defendants actively concealed the scheme both by deceptively claiming that Clawbacks are nothing more than legitimate "copays" (¶ 81), and through gag clauses intended to prevent pharmacists from disclosing the scheme to Class members. (¶¶ 82-92, 318.) Moreover, when the scheme came to light, Defendants issued a false statement claiming that charging more than a drug's price

"helps ensure the millions of people we serve have affordable access to the drugs they need."  (¶ 104.)  When they then realized that "[t]he hand in the cookie jar ha[d] been caught," they claimed to eliminate their "Pharmacy Reimbursement Overpayment program." (¶¶ 105, 105 n.34, 106.)  This powerful circumstantial evidence demonstrates that the Clawback scheme failed to "conform to standards of moral uprightness, fundamental honesty, and fair play[,]" *Atlas*, 886 F.2d at 991, and that Defendants fraudulently concealed the Clawback scheme from Plaintiffs and Class members. Plaintiffs have thus alleged that Defendants engaged in a scheme to defraud.

### 2.      Plaintiffs allege Defendants' acts of fraud with particularity.

One of Rule 9(b)'s primary purposes is to "protect[] the defendant from baseless claims." *U.S. ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 918 (8th Cir. 2014). By admitting to their "implementation of the 'clawback' mechanism ***Plaintiffs complain of***" (Br. at 1 n.1), Defendants have confirmed that Plaintiffs' allegations are not just plausible, but that they are, in fact, true.  Where Plaintiffs allege a "systematic practice of the submission of fraudulent claims over an extended period of time," Plaintiffs satisfy Rule 9(b) by alleging "some representative examples of the fraudulent conduct with particularity."  *Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, 781 F. Supp. 2d 837, 846 (D. Minn. 2011) (Ericksen, J.); *Gunderson v. ADM Inv'r Servs., Inc.*, 230 F.3d 1363 (8th Cir. 2000).  To do so, Plaintiffs must allege "the time, place, and contents of the fraudulent representation, as well as the identity of the persons who made the representation and what was obtained or lost."  *Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1121 (D. Minn. 2008) (Ericksen, J.).

Plaintiffs pleaded 100 representative examples of Defendants' fraudulent conduct with particularity.   (¶ 318(i)-(c).)   In each instance, Plaintiffs alleged the date of Defendants' communication, the name and location of the pharmacy that received it, the precise cost-sharing amount that Defendants fraudulently directed the pharmacy to collect, and the precise amount that Defendants unlawfully clawed back.  *Id*.  Plaintiffs also explained in each instance that "Defendants' statements were fraudulent because [the Plaintiff's] plan did not require [the Plaintiff] to pay that amount and Defendants knew the same."  *Id*.  These allegations satisfy Rule 9(b).  *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995).

## III.     Plaintiffs state a claim under RICO § 1962(d) (Count IX).

Having stated a claim under § 1962(c), Plaintiffs state a claim under § 1962(d) "simply by presenting additional evidence that the defendant entered into an agreement to breach the statute."  *Handeen*, 112 F.3d at 1354.   Plaintiffs do so by alleging that Defendants "agreed that [they] or a coconspirator would engage in a pattern of racketeering activity."  *McArthur*, 850 F.3d at 934; *Henley*, 766 F.3d at 906.

Plaintiffs also alleged that Defendants agreed to commit the predicate acts of mail and wire fraud in furtherance of the Clawback scheme and that Defendants "conspired with other health insurance companies that use Optum, including Cigna Corporation and the Cigna Health and Life Insurance Company, and with other unnamed PBMs" with the knowledge and intent that they would commit the predicate acts of mail and wire fraud in furtherance of the Clawback scheme.  (¶¶ 327-29.)   Accordingly, Plaintiffs have stated a claim under § 1962(d).

56

**IV.    Plaintiffs' state law claims are well-pleaded.**

**A.    Plaintiffs state a claim for unjust enrichment (Count XII).**

Defendants incorrectly claim that the Non-ERISA Plaintiffs' unjust enrichment claim must be dismissed because "the rights of the parties are governed by a valid contract." (Br. at 39.)  This argument fails because no contract governs *the conduct at issue*.  First, no Plaintiff has a contract with Optum.  *O'Leary v. Miller & Schroeder Invs. Corp.*, No. A03-1003, 2004 WL 237377, at *5 (Minn. Ct. App. Feb. 10, 2004); *Kevin Breyer Concrete, Inc. v. Beutel*, No. A09-1547, 2010 WL 2732384, at *3-4 (Minn. Ct. App. Apr. 13, 2010).  Second, United's fraudulent misconduct is outside the rights and remedies contained in any contract.  *Schimmelfennig v. Gaedke*, 223 Minn. 542, 548 (1947) (unjust enrichment permitted where a claim falls outside the scope of a contract's subject matter); *cf. United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606-09 (8th Cir. 1999); *Christopher v. Hanson*, No. Civ. 09-3703, 2011 WL 2183286, at *10 (D. Minn. June 6, 2011) (Ericksen, J.).  Therefore, Defendants' argument for dismissal of Plaintiffs' unjust enrichment claim fails.

**B.    Plaintiff Wiltsie states a valid MCPA claim against Optum (Count XIII).**

Defendants argue that MCL § 445.904(1)(a) bars Plaintiff Wiltsie's MCPA claim against Optum.[43]  Whether a claim falls under this exemption is based on "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited."  *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 206

---

[43]     Plaintiff Wiltsie voluntarily dismisses Count XIII as to United and Count XIV as to all Defendants.

(2007).  Defendants cite no statute, regulation, or case indicating that Michigan or federal law regulates the conduct of ***Optum*** – a PBM, ***not*** an insurer.  Indeed, the PBM industry is largely ***un***regulated.  (¶¶ 77-81.)  Thus, Defendants fail to demonstrate this exemption applies to Optum.  *See* MCL § 445.904(1)(b); *Pedinelli v. Turnberry Park Estates Inc.*, No. 324331, 2016 WL 370043, at *6 (Mich. Ct. App. Jan. 28, 2016); *Deacon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166, 1176 (N.D. Cal. 2012); *Am. Auto. Ass'n, Inc. v. Advanced Am. Auto Warranty Servs., Inc.*, No. 09-CV-12351, 2009 WL 3837234, at *6 (E.D. Mich. Nov. 16, 2009).

Defendants also argue that MCL § 445.904(3), which references the Michigan insurance code, bars Plaintiff Wiltsie's MCPA claim.  The Michigan insurance code states: "A person shall not engage in . . . an unfair or deceptive act or practice ***in the business of insurance***."  MCL § 500.2003(1).  An "insurer" is defined as one "engaged . . . in the business of making insurance or surety contracts."  MCL § 500.106.  An insurance contract's primary features are the spreading and underwriting of the policyholder's risk.  *See Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 211 (1979).  Defendants cannot demonstrate that Optum, as a PBM, assumes any of the risk of loss United bears.  Thus, this exemption also does not apply and Plaintiff Wiltsie's MCPA claim against Optum should not be dismissed.

### C.  Plaintiffs Fellgren and Rabbiner state valid FDUTPA claims (Counts XV & XVII).

Defendants seek dismissal of Plaintiffs Rabbiner and Fellgren's FDUTPA claims, arguing that the statute "does not apply" to any "person or activity regulated under laws

administered by" Florida's Office of Insurance Regulation or Department of Financial Services ("FLOIR"). Fla. Stat. § 501.212(4)(a)-(b). "Florida courts resolve questions about the applicability of this provision by looking to the activity which is the subject of the lawsuit, and whether that activity is subject to the regulatory authority of [FLOIR]." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc*., 427 Fed. App'x 714, 723 (11th Cir. 2011), *rev'd in part on other grounds by State Farm Mut. Auto. Ins. Co. v. Williams*, 563 Fed. App'x 665, 671 (11th Cir. 2014). FLOIR regulates neither Optum, as a PBM, nor United, which provided only claims administration services, not insurance, to Plaintiff Fellgren's self-insured plan. (*See* ECF No. 80, Ex. 20 at 1970 (United provides administrative services to the plan and "does not provide medical services or make treatment decisions"), 1977 (United provides claims administrative services), 1985.) Furthermore, Clawbacks are not "activity regulated" under Florida's insurance laws. *See W.S. Badcock Corp. v. Myers*, 696 So. 2d 776, 782-83 (Fla. Dist. Ct. App. 1996); *Martorella v. Deutsche Bank Nat'l Tr. Co*., 161 F. Supp. 3d 1209, 1216-18 (S.D. Fla. 2015), *adhered to on reconsideration*, No. 12-80372-CIV, 2015 WL 10857441 (S.D. Fla. Nov. 9, 2015) (FLOIR did not regulate claim addressing lender-placed insurance where "a large percentage of that 'premium' was designated not for the insurance, but for commissions and other compensation that [the defendants] allegedly pocketed"); *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1268 (S.D. Fla. 2015) (defendant's failure to disclose retention of 75% of class members' premiums not related to business of insurance). Thus, the exemption does not apply and Plaintiffs Rabbiner and Fellgren's FDUTPA claims should not be dismissed.

### D.    The Non-ERISA Plaintiffs have statutory standing to pursue their MNDTPA claim (Count XVI).

Defendants argue that because the Non-ERISA Plaintiffs are not Minnesota residents, they lack *statutory* standing to sue under the MNDTPA.  Defendants wrongly claim that whether any Plaintiff suffered an injury-in-fact *in* Minnesota is the bright line test for statutory standing.[44]   Whether the MNDTPA has extraterritorial application implicates due process concerns and necessitates a choice of law analysis.  *In re: St. Jude Med., Inc.*, 425 F.3d 1116, 1120-21 (8th Cir. 2005).   Because Defendants failed to identify any conflict with another state's law, their motion to dismiss this claim should be denied.  *See*, *e.g.*, *Laughlin v. Target Corp.*, No. 12-489, 2012 WL 3065551, at *6 (D. Minn. July 27, 2012) (Ericksen, J.).

Importantly, significant ties to Minnesota exist.   Defendants' ultimate parent company, UHG, is headquartered in Minnesota.  (¶ 39.)  The primary operating divisions of UHG – UHC, UHC Services, and Optum, Inc. – are headquartered in Minnesota.  (¶¶ 40, 43, 46.)   And, UHG or Optum, Inc. wholly own and control the remaining Defendants.  (¶¶ 40-42, 44-45, 47.)   As a result, Defendants' Clawback scheme was devised, approved, and disseminated from Minnesota.  (¶¶ 18-19.)   Therefore, the

---

[44]    Defendants do not dispute that Plaintiffs alleged an injury-in-fact (lost money) caused by the Clawback scheme that would be redressed by a favorable ruling from this Court.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).   To the extent Defendants question whether Plaintiffs have "standing" to sue on behalf of class members residing in other states, the question prematurely implicates commonality and predominance issues more appropriately addressed at class certification.  *See*, *e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014); *Roth v. Life Time Fitness, Inc.*, No. 15-3270, 2016 WL 3911875, at *4 (D. Minn. July 14, 2016).

MNDTPA, which protects any "person likely to be damaged by a deceptive trade practice[,]" Minn. Stat. § 325D.45, and contains no other limiting language requiring a plaintiff to be located or injured in Minnesota, applies extraterritorially and permits non-Minnesota residents to seek redress.  *See, e.g.*, *Maher v. Sempris, LLC*, No. 13-2202, 2014 WL 4749186, at *6 (D. Minn. Sept. 24, 2014).

Defendants rely on *Ferrari v. Best Buy Co., Inc.*, which states without further analysis that "'[n]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury.'"  No. 14-2956, 2015 WL 2242128, at *9 (D. Minn. May 12, 2015) (quoting *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-2644, 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014)).  *Insulate*, on which *Ferrari* relies, has been distinguished as an antitrust action in which 'the constitutional and prudential requirements of standing take on particular significance."  *Target*, 66 F. Supp. 3d at 1160.  Furthermore, the *Insulate* plaintiff "ha[d] not identified any specific state in which wrongful conduct occurred that may be causally connected to [plaintiff's] injury."  *Insulate*, 2014 WL 943224, *11.  This distinction is significant.  Judge Montgomery, who authored *Insulate*, has also held that the MNDTPA has extraterritorial application where the alleged deceptive conduct was conceived in, or emanated from, Minnesota, where the defendant had its principal place of business.  *Mooney v. Allianz Life Ins. Co. of N. Am.*, 244 F.R.D. 531, 535 (D. Minn. 2007); *cf. Maher*, 2014 WL 4749186, at *6.  *Ferrari* is not persuasive where, as here, Defendants have significant contacts with Minnesota.  *Cf. In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 486-87 (D. Minn. 2015).

### E.     Plaintiff Rabbiner's state law claims against Optum are not preempted (Counts XVII & XVIII).

Federal law does not preempt Plaintiff Rabbiner's law claims against Optum. Congressional intent remains "the ultimate touchstone" in determining whether federal law preempts state law. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). When a federal statute contains a preemptive clause, courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). The analysis begins with "the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008).[45]

The preemptive clause here provides that "standards established under" Medicare Part D "shall supersede any State law or regulation . . . with respect to" prescription drug plans "which are offered by" PDP sponsors. *See* 42 U.S.C. §§ 1395w-26(b)(3), 1395w-112(g).[46] There can be no preemption in the absence of a "standard[] established under" Medicare Part D. *See, e.g.*, *Uhm*, 620 F.3d at 1148, 1148 n.20; *N.Y. City Health & Hosps. Corp. v. WellCare of N.Y., Inc.*, 801 F. Supp. 2d 126, 140-41 (S.D.N.Y. 2011); *Med. Card. Sys. v. Equipo Pro Convalencia*, 587 F. Supp. 2d 384, 388 (D.P.R. 2008).

---

[45]     Defendants assert only "express" preemption arguments. (Br. at 43.) They do not (and cannot) argue that either "field" or "conflict" preemption applies. *See Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 939 n.2 (11th Cir. 2013).

[46]     Medicare Part D's preemptive clause incorporates Medicare Part C's preemptive clause. Part C's preemptive clause applies to "State law or regulation . . . with respect to MA plans which are offered by MA organizations." 42 U.S.C. § 1395w-26(b)(3). Part D's preemptive clause makes clear that, in the Part D context, that clause should be read to apply to "PDP sponsors and prescription drug plans." *Id.* § 1395w-112(g).

The "standard[]" must be "a statutory provision or a regulation promulgated under [Medicare Part D] and published in the Code of Federal Regulations." *Uhm*, 620 F.3d at 1148 n.20; *WellCare*, 801 F. Supp. 2d at 140 (quoting *Medical Card*, 587 F. Supp. 2d at 387).

There is no applicable statutory provision or regulation promulgated under Medicare.  The law is silent on what PBMs, like Optum, may conceal from consumers. Regulations governing marketing materials and plan descriptions under 42 C.F.R. Part 423 (Br. at 45), do not apply to PBMs.  They concern only what a Part D plan or sponsor may do.  *See* 42 C.F.R. § 423.128(a); *id.* § 423.2262(a);[47] *id.* § 423.2268.  There is no preemptive standard here and hence, no preemption.[48]  *See Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd*, 557 F. App'x 53 (2d Cir. 2014).

Defendants appear to assume that Plaintiff Rabbiner's state law claims against Optum are based on statements made in the Evidence of Coverage or in marketing materials – *i.e.*, in the documents to which the regulations arguably apply.  Nowhere does the Complaint charge that Optum made misrepresentations in documents that Part D

---

[47]     42 C.F.R. § 423.2264, which Defendants cite, instructs CMS how to review marketing materials.  This provision is explicitly linked to 42 U.S.C. § 423.2262 (*see id.* § 423.2264 (directing CMS in its "review[] [of] marketing material or enrollment forms ***under § 423.2262***")), and, as indicated, § 423.2262 applies only to Part D sponsors and plans, not PBMs.

[48]     In Defendants' cited cases, a standard promulgated was under the Medicare Act that explicitly applied to the entities being sued.  *Uhm*, 620 F.3d at 1145; *Rudek v. Presence Our Lady of Resurrection Med. Ctr.*, No. 13 C 06022, 2014 WL 5441845, at *6 (N.D. Ill. Oct. 27, 2014); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1090 (N.D. Cal. 2011).

regulates.  Indeed, those are United's documents, which have nothing to do with Optum.

Moreover, Optum behaved deceptively by staying silent, when it should have spoken,

and forcing pharmacies to misrepresent cost-sharing amounts and conceal the Clawback

scheme.  (¶¶ 396, 406-07.)

*Uhm*, on which Defendants rely, is irrelevant.  There, plaintiffs alleged that a

corporate parent "participated alongside its subsidiary," a PDP sponsor, "in marketing the

PDP."  620 F.3d at 1157-58.  The Ninth Circuit held that the claim against the corporate

parent was "entirely derivative" of the claim against the subsidiary.  *Id.* at 1157.  Here, by

contrast, the claims against Optum are independent because they are based not on

Optum's participation in marketing the health plans, but on its misrepresentations and

omissions within its own sphere of operations – the sale of prescription drugs.  *Uhm*'s

holding, by its own explicit terms, does not reach such a case.  *Id.* at 1158.[49]  Defendants'

efforts to conflate UHC and Optum for purposes of defending this claim brought only

against Optum should be rejected.

**F.    Defendants made material misrepresentations and omissions that are
actionable under state law.**

Defendants argue that Plaintiffs fail to state a claim for common law fraud or

under Michigan, Minnesota, and Florida's consumer protection statutes by failing to

identify a misrepresentation that is deceptive.  Defendants not only are wrong that

Plaintiffs failed to identify affirmative misrepresentations, but also ignore that Plaintiffs

---

[49]    Defendants' arguments do not even reach Plaintiff Rabbiner's state law claims
under the FDUTPA.  (¶¶ 394-95.)   This allegation is independent of any
misrepresentations or omissions.

have pleaded actionable omissions that are sufficient to state a claim.  Defendants' factual challenge regarding whether these misrepresentations are deceptive is inappropriate for resolution at this stage.

There is no dispute over which plan provisions are at issue.  Plaintiffs' plans contain nearly identical applicable language that the Complaint summarizes.  (¶¶ 13, 21, 26, 31, 33-34, 69, 73-75, 108-26, 147-48; *see also supra* at 5-10.)  Despite Defendants' contention that this language is not fully quoted for each Plaintiff, Plaintiffs do quote the plan terms Defendants misrepresented.  (¶¶ 73, 334.)  Each Plaintiff also identifies the dates and places of their purchases, where the misrepresentations (and omissions) caused their injuries, and the amounts of their overpayments.  (¶¶ 128, 133, 138, 140-41.) Despite this, Defendants argue that their representations to Plaintiffs Fellgren and Rabbiner were not unfair or deceptive and that Plaintiff Stevens "is ***not*** entitled to pay . . . the negotiated price."  (Br. at 48).  Defendants' arguments, however, raise factual disputes inappropriate for resolution at the pleading stage.  *See*, *e.g.*, *Witt v. La Gorce Country Club, Inc.*, 35 So. 3d 1033, 1040 (Fla. Dist. Ct. App. 2010).  That Defendants themselves quote and factually dispute the plan provisions at issue belies Defendants' argument that the Complaint's allegations are insufficient.  (Br. at 10-11 & Ex. 70.) Accordingly, Plaintiffs have plausibly alleged actionable misrepresentations.

Plaintiffs' allegations also encompass Defendants' failure to disclose the existence of their Clawback scheme.  (¶¶ 81-106.)  Material omissions constitute actionable fraud under each of the state laws Plaintiffs invoke.  *Zine v. Chrysler Corp.*, 236 Mich. App.

261, 280-82 (Mich. 1999);[50] *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003); *Cafaro v. Zois*, No. 16-15522, 2017 WL 2258535, at *5 (11th Cir. May 23, 2017); *Podpeskar v. Makita U.S.A. Inc.*, No. Civ. 15-3914, 2017 WL 1169533, at *7 (D. Minn. Mar. 28, 2017).[51]  Plaintiffs also pleaded that Defendants had a duty to disclose the Clawback scheme, even though such a showing is not necessarily required to sustain a claim of fraud based on omissions.  *See Morris v. ADT Sec. Servs.*, 580 F. Supp. 2d 1305, 1310 (S.D. Fla. 2008) ("[A] duty to disclose is not an element of FDUTPA.").  First, Defendants alone knew that they had devised and implemented the Clawback scheme, and from this "special knowledge of material facts to which the other party does not have access" arose a duty to disclose.  *World Bus. Lenders, LLC, v. Palen*, No. 16-cv-329, 2017 WL 2560918, at *5 (D. Minn. June 13, 2017); *Podpeskar*, 2017 WL 1169533, at *7. (*See also* ¶¶ 81, 188-92, 201-08.)  Second, to the extent Defendants disclosed material facts, *i.e.*, what Plaintiffs' cost-sharing amounts ***should have been***, Defendants were duty-bound to "disclose that information fully," including the existence of Defendants' Clawback scheme.  *Cafaro*, 2017 WL 2258535, at *5; *Stalker v. MBS Direct, LLC*, No. 10-11355, 2011 WL 797981, at *6 (E.D. Mich. Mar. 1, 2011).  Accordingly, Plaintiffs have plausibly alleged actionable omissions.

---

[50]     Although Defendants accuse Plaintiff Wiltsie of offering "nothing more than a recitation of lists of prohibited activities . . . without identifying which sections were purportedly violated" (Br. at 49), Plaintiffs identified the seven MCPA sections Defendants violated.  (¶ 353(a)-(g).)  Defendants also accuse Plaintiff Wiltsie of failing to provide "any factual basis for the purported violations" (Br. at 49), ignoring both his incorporation by reference to "each and every allegation above" (¶ 352) and *Braden*'s command to read Plaintiffs' Complaint "as a whole."  588 F.3d at 594.

[51]     The economic loss rule is inapplicable because Plaintiff Rabbiner has no contract with the Optum Defendants as PBMs.

Finally, even if Plaintiffs hadn't satisfied Rule 9(b) by pleading 100 detailed examples of Defendants' fraudulent conduct, *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556-57 (8th Cir. 2006), Defendants' admission to their "implementation of the 'clawback' mechanism" (Br. at 1 n.1) provides more than "sufficient indicia of reliability to support [Plaintiffs'] allegations." *Liberty Mutual*, 88 F. Supp. 3d at 1002. To require additional specificity in the face of Defendants' admission, when they have in their possession all the relevant records identifying the particulars of every clawback, *U.S. ex rel. Donegan v. Anesthesia Assocs. of Kans. City, PC*, No. 4:12-CV-0876, 2014 WL 3729641, at *3 (W.D. Mo. July 28, 2014), would serve little purpose other than to dishonor the command to read Rule 9(b) "in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading." *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

Thus, Plaintiffs' common law fraud and state consumer protection claims should not be dismissed.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion.

DATED:  June 30, 2017                  Respectfully submitted
                                       **SCOTT+SCOTT,**
                                       **ATTORNEYS AT LAW, LLP**

                                        *s/ Joseph P. Guglielmo*
                                       Joseph P. Guglielmo
                                       Erin G. Comite
                                       Carey Alexander
                                       The Helmsley Building
                                       230 Park Avenue, 17th Floor
                                       New York, NY 10169

Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
calexander@scott-scott.com

Robert A. Izard
Craig A. Raabe
Christopher M. Barrett
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: 860-493-6292
Facsimile:  860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

*Interim Co-Lead Class Counsel for Plaintiffs*

Daniel R. Shulman (#100651)
John M. Nichols (#78943)
**GRAY PLANT MOOTY**
80 South 8th Street
500 IDS Center
Minneapolis, MN 55402
Telephone: 612-632-3000
Facsimile:  612-632- 4444
daniel.shulman@gpmlaw.com
john.nichols@gpmlaw.com

*Liaison Counsel for Plaintiffs*

Derek W. Loeser
Lynn Lincoln Sarko
Erin M. Riley
Gretchen S. Obrist
**KELLER ROHRBACK, LLP**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: 206-623-1900
Facsimile:  206-623-3384
dloeser@kellerrohrback.com

lsarko@kellerrohrback.com
eriley@kellerrohrback.com
gobrist@kellerrohrback.com

*Chair of Executive Committee for Plaintiffs*

Daniel E. Gustafson
Karla M. Gluek
Michelle J. Looby
Joseph C. Bourne
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: 612-333-8844
Facsimile:  612-339-6622
dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
mlooby@gustafsongluek.com
jbourne@gustafsongluek.com

*Executive Committee Member and Chair of the
Discovery Committee for Plaintiffs*

Brian C. Gudmundson
**ZIMMERMAN REED, LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-341-0400
Facsimile:  612-341-0844
brian.gudmundson@zimmreed.com

William H. Narwold
**MOTLEY RICE LLC**
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-882-1676
Facsimile:  860-882-1682
bnarwold@motleyrice.com

Ronen Sarraf

69

Joseph Gentile
**SARRAF GENTILE LLP**
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone: 516-699-8890
Facsimile:  516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

E. Kirk Wood
**WOOD LAW FIRM, LLC**
P.O. Box382434
Birmingham, AL 35238-2434
Telephone: 205-908-4906
Facsimile:  866-747-3905
ekirkwood1@bellsouth.net

Karen Hanson Riebel
Kristen G. Marttila
**LOCKRIDGE GRINDAL NAUEN, P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: 612-596-4097
Facsimile:  612-339-0981
khriebel@locklaw.com
kgmarttila@locklaw.com

Andrew A. Lemmon
**LEMMON LAW FIRM**
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Telephone: 985-783-6789
Facsimile:  985-783-1333
andrew@lemmonlawfirm.com

- and -

650 Poydras Street, Suite 2335
New Orleans, LA 70130
Telephone: 504-581-5644
Facsimile:  504-581-2156
andrew@lemmonlawfirm.com

*Executive Committee Members for Plaintiffs*

Nicholas A. Palerino
P.O. Box 904
Opelika, AL 36803
Telephone: 334-750-7583
nickpalerino@gmail.com

Mark Reinhardt (#90530)
Garrett D. Blanchfield (#209855)
Brant D. Penney (#316878)
**REINHARDT WENDORF &**
**BLANCHFIELD**
E 1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone: 651-287 2100
Facsimile:  651-287 2103
m.reinhardt@rwblawfirm.com
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com

Eugene A. Spector
William G. Caldes
Rachel E. Kopp
**SPECTOR ROSEMAN KODROFF &**
**WILLIS, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: 215-496-0300
Facsimile:  215-496-6611
espector@srkw-law.com
bcaldes@srkw-law.com
rkopp@srkw-law.com

David P. McLafferty
**LAW OFFICES OF DAVID P.**
**MCLAFFERTY & ASSOCIATES, P.C.**
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610-940-4000
Facsimile:  610-940-4007

71

dmclafferty@mclaffertylaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

 *s/ Joseph P. Guglielmo*
Joseph P. Guglielmo